Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC, 2021 NCBC 12.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 1024

LORAY MASTER TENANT, LLC,
and JOSEPH LENIHAN,

Plaintiffs,

v.

FOSS N.C. MILL CREDIT 2014
FUND I, LLC; FOSS AND
COMPANY, INC.; and
GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

Defendants.

**ORDER AND OPINION ON
DEFENDANT GOVERNMENT
EMPLOYEES INSURANCE
COMPANY'S MOTION TO DISMISS**

1.     **THIS MATTER** is before the Court on Defendant Government Employees Insurance Company's ("GEICO") Motion to Dismiss (the "Motion" or "Motion to Dismiss") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  (ECF No. 14.)

2.     This case arises from Defendant Foss N.C. Mill Credit 2014 Fund I, LLC's ("Foss 2014") alleged failure to timely pay certain obligations in exchange for the right to claim state and federal tax credits that Plaintiff Loray Master Tenant, LLC ("Loray") generated while developing historic property.  Plaintiffs allege that GEICO, an investor in Foss 2014, asserted domination and control over Foss 2014 and its decision to delay required payments to Loray and thus should be held liable for Foss 2014's alleged actions that underlie Plaintiffs' claims.

3.     Having considered the Motion, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS** the Motion and **DISMISSES** Plaintiffs' claims against GEICO **with prejudice**.

*Rosenwood, Rose & Litwak, PLLC, by Nancy S. Litwak, Carl J. Burchette, Erik M. Rosenwood, and Ryan Michael Arnold, for Plaintiffs Loray Master Tenant, LLC and Joseph Lenihan.*

*Blanco Tackaberry & Matamoros, P.A., by Peter J. Juran and Chad A. Archer, for Defendants Foss N.C. Mill Credit 2014 Fund I, LLC and Foss and Company, Inc.*

*Williams Mullen, by Camden R. Webb and Lauren E. Fussell, for Defendant Government Employees Insurance Company.*

Bledsoe, Chief Judge.

## I.

## FACTUAL BACKGROUND

4. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6), reciting instead only those facts in the Amended Complaint relevant to the Court's determination of the Motion.

5. The Loray Mill (the "Mill") is a large-scale urban revitalization and historic preservation project located in Gastonia, North Carolina. (First Am. Compl. [CORRECTED] ¶ 10 [hereinafter "Am. Compl."], ECF No. 32.)[1] Loray is the developer and managing member of Loray Mill Redevelopment, LLC, the entity that owns the Mill. (Am. Compl. ¶ 11.)

6. The Mill was developed in part through the use of historic tax credits granted by North Carolina and the federal government to developers who restore historic buildings. (Am. Compl. ¶ 12.) Because developers cannot sell tax credits outright under North Carolina law, Loray sought investors to make capital

---

[1] The Court refers to the corrected version of the Amended Complaint filed on January 11, 2021 and located at ECF No. 32 for purposes of this Order and Opinion.

contributions in exchange for the right to use the tax credits generated by the project. (Am. Compl. ¶¶ 14–15.)

7.   On or about March 27, 2013, Loray entered into an operating agreement with various entities that agreed to become members of Loray and make investments in the Mill in exchange for the right to claim the tax credits the Mill generated.  (Am. Compl. ¶ 16.)  These investors included Chevron TCI, Inc. ("Chevron"), as well as Foss 2014 and Foss N.C. Mill Credit 2011 Fund I, LLC ("Foss 2011"), entities created by Defendant Foss and Company, Inc. ("Foss").  (Am. Compl. ¶¶ 17–18.)

8.   Pursuant to the operating agreement, Loray was to obtain loans to fund construction of the Mill.  (Am. Compl. ¶ 25.)  When tax credits were generated, Loray was to pass them through to Foss 2014 and the other Loray investors, which were to then pass those credits on to customers.  (Am. Compl. ¶ 25.)  The customers, including Foss 2014's customer, GEICO, were then to make payments to Loray through the investing entities.  (Am. Compl. ¶ 25.)

9.   To effectuate this plan, Loray borrowed $8,300,000 (the "Bridge Loan") from Central State Bank ("CSB") in March 2013.  (Am. Compl. ¶¶ 26–28.)  According to Plaintiffs, "it was understood by all parties that the Bridge Loan . . . would be paid off via Defendants[.]"  (Am. Compl. ¶ 27.)

10.   In early March 2016, Loray notified Foss that payment was due in return for the tax credits Foss 2014 had already received and passed through to GEICO. (Am. Compl. ¶ 32.)  On March 11, 2016, Foss suggested a new funding agreement (the "Agreement") that would allow Loray to pay off the Bridge Loan with investor

payments.  (Am. Compl. ¶ 34.)  On March 22, 2016, Loray, Foss 2014, Foss 2011, and CSB entered into the Agreement.  (Am. Compl. ¶ 36.)  The Agreement provided that Foss 2014 would fund approximately $4,000,000 upon the signing of a settlement agreement between Loray and its general contractor, with which Loray had an ongoing dispute.  (Am. Compl. ¶ 34.)  Foss 2011 agreed to pay approximately $3,000,000.  (Am. Compl. ¶ 42.)  The Agreement did not set any other conditions or limitations on Foss 2014's payment obligation.  (Am. Compl. ¶ 34.)

11.    On or about March 23, 2016, Foss 2011 wired the full amount it owed to Loray, completing its obligation under the Agreement.  (Am. Compl. ¶ 45.)  However, Foss 2014 failed to pay its capital contributions because, as Plaintiffs allege, "G[EICO] was unwilling to fund its obligations."  (Am. Compl. ¶ 46.)  In response, on or about March 29, 2016, Loray requested an update on payment and confirmed that it had entered into a settlement agreement with its general contractor the prior week, partially resolving their dispute.  (Am. Compl. ¶ 47; *see* Am. Compl. Ex. I.)  Foss responded that it was waiting for Foss 2014's investor approval.  (Am. Compl. ¶ 47.)

12.    Foss 2014 then introduced a series of preconditions it required before it would make its payment.  According to Plaintiffs, GEICO was the driving force behind these actions and caused Foss 2014 to "backpedal," "first by trying to trick [Loray] into rescinding or amending the fully enforceable [Agreement], and/or beginning to invent preconditions to funding the capital account."  (Am. Compl. ¶ 48.)

13.    First, Plaintiffs allege that on March 31, 2016, Foss claimed that the signed Agreement contained an error, (Am. Compl. ¶ 50), and on April 1, 2016, Foss

attempted to rescind the Agreement by circulating a revised contract that would have "substantially changed" payment obligations, (Am. Compl. ¶ 49). Loray refused to sign the revised document. (Am. Compl. ¶ 53.)

14. According to Plaintiffs, "Foss then pivoted to creating a series of roadblocks and arbitrary conditions to funding, none of which were set forth in the [Agreement]." (Am. Compl. ¶ 55.) On or about April 19, 2016, Foss indicated that Foss 2014's investor would not make its payment until the Mill was lien-free. (Am. Compl. ¶ 56.) Loray worked through May and June to resolve all liens on the Mill filed by its subcontractors. (Am. Compl. ¶ 59.) Foss then indicated that it needed a title endorsement proving the Mill to be lien-free, which Loray obtained and forwarded to Foss on or about June 21, 2016. (Am. Compl. ¶¶ 59–60.)

15. Next, Foss expressed concerns that Loray's ongoing dispute with its general contractor could result in a future lien. (Am. Compl. ¶ 62.) On or about July 6, 2016, Loray attempted to explain why that was not a valid reason to withhold payment under the Agreement, (Am. Compl. ¶ 62), to which Foss responded with "yet another list of 'investor' concerns[,]" (Am. Compl. ¶ 63). This "investor," Plaintiffs allege, was GEICO. (Am. Compl. ¶ 63.)

16. On or about July 7, 2016, Loray informed Foss that it believed Foss 2014 was in violation of its obligations under the Agreement. (Am. Compl. ¶ 64.) Foss continued to refuse payment, citing the then pending lawsuit between Loray and its general contractor as its grounds. (Am. Compl. ¶ 65.) Consequently, counsel for Loray worked to resolve the lawsuit with the general contractor. (Am. Compl. ¶ 66.)

On or about July 19, 2016, Loray informed Foss that the general contractor agreed to dismiss its lawsuit against Loray. (Am. Compl. ¶ 67.)

17. Foss again refused to make its payment, this time explaining that it did not want to pay until Chevron committed to make a payment for its tax credits. (Am. Compl. ¶ 68.) On July 20, 2016, Foss drafted an escrow agreement in which Foss would pay the full amount to CSB, which would hold the funds in escrow rather than apply them to the Bridge Loan until such time as Chevron made its payment. (Am. Compl. ¶ 69.) By July 27, 2016, both Foss and Chevron insisted on the escrow agreement, which would also require Loray to pay their legal fees. (Am. Compl. ¶ 70.)

18. Chevron made a payment by August 2, 2016 in anticipation of the escrow agreement's execution. (Am. Compl. ¶ 71.) When Foss 2014 still refused to make any payments, Loray issued a notice of default. (Am. Compl. ¶ 72.) Foss 2014 continued to demand that Loray sign the escrow agreement. (Am. Compl. ¶ 73.) On August 12, 2016, Foss circulated a revised draft of the escrow agreement, and Foss 2014 wired funds to the escrow account at CSB. (Am. Compl. ¶¶ 73–74.) Plaintiff Joseph Lenihan then contacted CSB and instructed CSB to apply the payment to the Bridge Loan and otherwise release the funds to support the project. (Am. Compl. ¶ 75.) However, CSB refused, stating that all conditions of the escrow agreement had not yet been met. (Am. Compl. ¶ 76.) On August 17, 2016, counsel for Foss and CSB informed Loray that CSB had returned the funds to Foss. (Am. Compl. ¶ 83.)

19.  On or about September 14, 2016, Chevron made another payment, which Foss "unilaterally decided was a condition precedent to release of its funds[.]" (Am. Compl. ¶ 86.)  On September 15, 2016, Foss 2014 finally fulfilled its payment obligations under the Agreement.  (Am. Compl. ¶ 87.)  However, Foss informed Loray that it deducted over $25,000 in legal fees from the full amount owed, which, Plaintiffs allege, were incurred as a result of Foss's refusal to make timely payment. (Am. Compl. ¶ 88.)

20.  Plaintiffs allege that the Agreement required Foss 2014 to fulfill its payment obligations on March 23, 2016, that GEICO exerted complete control over Foss 2014's delay in payment, and that Plaintiffs incurred substantial damages awaiting the September 15, 2016 payment.  (Am. Compl. ¶ 75.)  Specifically, Plaintiffs allege that Foss 2014 is a "mere shell[ ,]" a "single purpose entit[y]" created solely as a vehicle through which its clients receive tax credits, (Am. Compl. ¶ 18), that GEICO was Foss 2014's sole source of funds, (Am. Compl. ¶ 21), that Foss 2014 acted at all times as GEICO's agent, (Am. Compl. ¶ 21), and that Foss 2014's failure to fulfill its payment obligation was a result of GEICO's unwillingness to fund the payment and desire to stall, (Am. Compl. ¶¶ 46, 48).

## II.

## PROCEDURAL BACKGROUND

21.  Plaintiffs initiated this action on March 13, 2020, (Compl., ECF No. 3), and filed their First Amended Complaint on July 28, 2020, (First Am. Compl., ECF No 5). Plaintiffs assert claims: (i) against all Defendants for breach of contract (and, in the

alternative, against GEICO and Foss for unjust enrichment), breach of the covenant of good faith and fair dealing, breach of fiduciary duty and constructive fraud, and civil conspiracy and (ii) against GEICO and Foss for piercing the corporate veil (and, in the alternative, against Foss for unfair and deceptive trade practices under N.C.G.S. § 75-1.1).

22. This case was designated a mandatory complex business case on August 25, 2020, (Designation Order, ECF No. 1), and assigned to the undersigned that same day, (Assignment Order, ECF No. 2).

23. GEICO filed its Motion to Dismiss on October 9, 2020. After full briefing, the Court held a hearing on the Motion on December 15, 2020 (the "Hearing"), at which all parties were represented by counsel.

24. The Motion is now ripe for resolution.

III.

LEGAL STANDARD

25. "When reviewing a complaint . . . under Rule 12(b)(6), [the Court] treat[s] a plaintiff's factual allegations as true." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 442 (2008) (quoting *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325 (2006)). However, "conclusions of law or unwarranted deductions of fact are not admitted." *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (quoting *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448 (2015)). The Court "consider[s] any exhibits attached to the complaint because '[a] copy of any written

instrument which is an exhibit to a pleading is a part thereof for all purposes.'" *Krawiec v. Manly*, 370 N.C. 602, 606 (2018) (quoting N.C. R. Civ. P. 10(c)).

26.   "Dismissal of an action under Rule 12(b)(6) is appropriate when the complaint 'fail[s] to state a claim upon which relief can be granted.'" *Arnesen*, 368 N.C. at 448 (quoting N.C. R. Civ. P. 12(b)(6)); *see also Wray*, 370 N.C. at 46 ("A complaint should not be dismissed under Rule 12(b)(6) . . . unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." (citation and internal quotation marks omitted)).

27.   The Supreme Court of North Carolina "[has] determined that a complaint fails in this manner when: '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Krawiec*, 370 N.C. at 606 (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)).

IV.

ANALYSIS

28.   The Court begins by noting that Plaintiffs describe their Amended Complaint as asserting "one non-derivative claim against GEICO" for unjust enrichment and as asserting "[t]he remainder of the claims against GEICO" for fiduciary duty and constructive fraud, breach of contract, breach of the covenant of good faith and fair dealing, and civil conspiracy as "derivative of the liability of Foss 2014 and predicated on a theory of agency and piercing the corporate veil (thus

implicating the relation back doctrine)." (Mem. Law Opp'n Def. GEICO's Mot. Dismiss 7 [hereinafter "Opp'n], ECF No. 18.) GEICO correctly notes, however, that Plaintiffs allege these claims "against 'Defendants' without any mention of GEICO's liability being derivative or pursuant to an alter ego theory" in the Amended Complaint. (Reply Br. Supp. Def. GEICO's Mot. Dismiss Pls.' Am. Compl. 1, ECF No. 22.) Plaintiffs instead allege a standalone cause of action against GEICO for "piercing the corporate veil," (Am. Compl. ¶¶ 131–39), contending that GEICO used its "domination and control over Foss 2014 to engage in the wrongful conduct described [in the Amended Complaint,]" (Am. Compl. ¶ 134).

29. North Carolina law is clear that the Court must consider the claims as pleaded for purposes of Rule 12(b)(6)—not the pleader's description of the claims in briefing—and the Court will do so here. *See, e.g.*, *Aecom Tech. Corp. v. Keating*, 2012 NCBC LEXIS 9, at *13 n.15 (N.C. Super. Ct. Feb. 6, 2012) ("The court's consideration of a Rule 12(b)(6) motion to dismiss is limited to the allegations that appear on the face of the pleading at issue."); *Perkins v. HealthMarkets, Inc.*, 2007 NCBC LEXIS 25, at *22 n.6 (N.C. Super. Ct. July 30, 2007) (stating that the trial court may not "go beyond the four corners of the Amended Complaint" when considering a Rule 12(b)(6) motion, despite counsel's arguments concerning matters outside the pleading).

30. The Court thus agrees with GEICO that Plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty and constructive fraud, and civil conspiracy have been alleged as direct claims against GEICO rather than as claims that depend upon and are derivative of Foss

2014's liability. (*See* Am. Compl.) The relevant statute of limitations for each of these claims, except constructive fraud, is three years. *See Brown v. Lattimore Living Trust*, 264 N.C. App. 682, 687 (2019) ("[T]he statute of limitations for a breach of contract action is three years[.]" (citation omitted)); *Flanders/Precisionaire Corp. v. Bank of N.Y. Mellon Tr. Co.*, 2015 NCBC LEXIS 36, at \*16 (N.C. Super. Ct. Apr. 7, 2015) (citing *Ussery v. Branch Banking & Trust Co.*, 227 N.C. App. 434, 439 (2013) (applying the three-year statute of limitations for contract claims to claims for breach of the duty of good faith and fair dealing), *rev'd and remanded on other grounds*, 368 N.C. 325 (2015); *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66 (2005) ("Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions[.]"); *Carlisle v. Keith*, 169 N.C. App. 674, 685 (2005) (applying "the three-year limitations period of N.C.[G.S.] § 1-52(5) to a civil conspiracy claim"). Because Plaintiffs allege that GEICO's misconduct occurred on March 23, 2016, (*see* Am. Compl. ¶ 75 (stating that the Agreement, "on its plain terms, had required funding by Foss 2014 back on March 23, 2016")), and did not bring this action against GEICO until July 28, 2020, Plaintiffs' claims against GEICO, except for constructive fraud, are time-barred.[2]

---

[2] Plaintiffs' constructive fraud claim is not time-barred. *See Babb v. Graham*, 190 N.C. App. 463, 480 (2008) ("[A] claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations[.]" (citation omitted)). However, Plaintiffs' constructive fraud claim against GEICO fails for a separate and independent reason, as explained *infra*.

31. Moreover, even if, as Plaintiffs contend, Plaintiffs' claims could be deemed timely or asserted as derivative of Foss 2014's liability, those claims still fail as a matter of law. The Court discusses each claim in turn.

A. Breach of Fiduciary Duty and Constructive Fraud

32. GEICO seeks dismissal of Plaintiffs' claims for breach of fiduciary duty and constructive fraud on the additional ground that Plaintiffs have failed to plead sufficient facts to show that GEICO owed Plaintiffs a fiduciary duty. (Mem. Supp. Mot. Dismiss Pls.' Am. Compl. 4 n.4 [hereinafter "Mem. Supp. Mot."], ECF No. 15.) The Court agrees.

33. It is axiomatic that "[f]or a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *King v. Bryant*, 369 N.C. 451, 464 (2017) (quoting *Dalton v. Camp*, 353 N.C. 647, 651 (2001)). A claim for constructive fraud likewise requires a plaintiff to allege facts establishing a confidential or fiduciary relationship. *Gen. Fid. Ins. Co. v. WFT, Inc.*, 269 N.C. App. 181, 185 (2020) ("Constructive fraud 'arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" (quoting *Forbis v. Neal*, 361 N.C. 519, 528 (2007))).

34. "The courts generally have declined to define the term 'fiduciary relation' and thereby exclude from this broad term any relation that may exist between two or more persons with respect to the rights of persons or property of either." *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931). "In general terms, a fiduciary relation is said to

exist [w]herever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Vail v. Vail*, 233 N.C. 109, 114 (1951) (citation and internal quotation marks omitted).

35. Certain relationships have been held to be inherently fiduciary. *See, e.g.*, *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (spouses, attorney and client, trustee and beneficiary, and partners to a partnership). On the other hand, "[t]he standard for finding a *de facto* fiduciary relationship is a demanding one: '[o]nly when one party figuratively holds all the cards . . . have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen.' " *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 636 (2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613 (2008)).

36. Here, Plaintiffs have failed to allege facts showing that GEICO and Foss 2014 were in a confidential or fiduciary relationship. Instead, Plaintiffs simply allege, in conclusory fashion, that the "agreements and terms . . . along with the facts and circumstances surrounding the formation of such agreements and the consequences for not timely performing thereunder[ ] placed [GEICO] in a position of trust and confidence with Plaintiffs and allowed [GEICO] . . . to exert domination and influence over the Plaintiffs." (Am. Compl. ¶ 113.) Such conclusory pleading need not be considered under Rule 12(b)(6) and does not afford Plaintiffs a basis to avoid dismissal. *See, e.g.*, *Estate of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 493

(2013) ("On a motion to dismiss under Rule 12(b)(6), the court is not . . . required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true."); *Meyer v. Walls*, 347 N.C. 97, 114 (1997) (noting that conclusory allegations are insufficient to withstand a motion to dismiss, and that "[t]he facts alleged in the complaint must support such a conclusion").

37.    In addition, Plaintiffs have alleged no facts showing that Plaintiffs and GEICO were in an inherently fiduciary relationship, *see Dallaire*, 367 N.C. at 367, nor have they pleaded facts showing they had any relationship with GEICO other than as a result of GEICO's pass-through relationship with Foss 2014.   While Plaintiffs have alleged that GEICO stalled payment to Foss 2014 and set a series of roadblocks to obstruct Foss 2014's performance to Loray, Plaintiffs have not alleged facts permitting a reasonable factfinder to conclude that GEICO was in a position of trust and confidence with Plaintiffs (as opposed to Foss 2014) in which GEICO "figuratively h[eld] all the cards" regarding any of the agreements, negotiations, or misconduct alleged in the Amended Complaint.  *Lockerman*, 250 N.C. App. at 636. As a result, because Plaintiffs have failed to plead facts showing they had a confidential or fiduciary relationship with GEICO, Plaintiffs' claims for breach of fiduciary duty and constructive fraud necessarily fail and shall be dismissed for this separate reason.

   B.    Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

38.    "[C]laims for breach of contract . . . necessarily hinge on the threshold issue of whether a valid contract actually existed between [the parties]." *Charlotte Motor*

*Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 6 (2013). To sue a defendant based on his alleged breach of contract with the plaintiff, the defendant must have been a party to that contract. *See King Fa, LLC v. Ming Xen Chen*, 248 N.C. App. 221, 224–25 (2016) ("In the context of a breach of contract claim, the parties who execute an agreement are real parties in interest and have standing to sue." (emphasis omitted)). Alternatively, the plaintiff may sue as a third-party beneficiary to a contract between the defendant and another. *See Wirth v. Sunpath, LLC*, 2017 NCBC LEXIS 84, at *16 (N.C. Super. Ct. Sept. 14, 2017) ("North Carolina has long recognized the right of third-party beneficiaries not in privity of contract to bring an action in their own name to enforce the contract made for their benefit[.]" (citation omitted)).

39. Plaintiffs allege that the Agreement was executed between Loray, Foss 2014, Foss 2011, and CSB, (Am. Compl. ¶ 36), but nowhere allege that GEICO was a party to the Agreement. Nor do Plaintiffs allege that they were third-party beneficiaries to any contract involving GEICO. As a result, Plaintiffs' breach of contract claim necessarily fails because Plaintiffs have alleged no basis upon which it may sue GEICO for breach of the Agreement. And because Plaintiffs' breach of the covenant of good faith and fair dealing is "part and parcel" of their breach of contract claim, (*compare* Am. Compl. ¶¶ 93–100 (basing the breach of contract claim on GEICO's alleged prevention of Foss 2014's prompt payment under the Agreement), *with* Am. Compl. ¶¶ 107–11 (basing the breach of covenant of good faith and fair dealing claim on GEICO's alleged prevention of Plaintiffs' receiving prompt payment

under the Agreement)), it follows that this claim must necessarily fail for the same reason. *See, e.g.*, *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 39 (2018) (affirming dismissal of breach of implied covenant of good faith and fair dealing claim where it was "identical to the basis for [the plaintiff's] breach of contract claim"); *Suntrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 833 (2012) ("As the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts."); *Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at *22 (N.C. Super. Ct. Aug. 20, 2019) ("[W]here a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, North Carolina courts treat the former claim as 'part and parcel' of the latter." (quoting *Cordaro*, 260 N.C. App. at 39) (cleaned up)).

C.    Unjust Enrichment

40.    GEICO argues that Plaintiffs' direct claim for unjust enrichment is barred by the applicable statute of limitations. (Mem. Supp. Mot. 3.)  In response, Plaintiffs contend that GEICO is equitably estopped from asserting the statute of limitations because Plaintiffs could not determine which GEICO entity was Foss 2014's investor until after the statute of limitations had expired. (Opp'n 7.)  Plaintiffs also argue that a trial court's decision prior to mandatory complex business case designation

permitting Plaintiffs to file the Amended Complaint under Rule 15 precludes this Court's consideration of GEICO's statute of limitations argument.[3] (Opp'n 12.)

41. As an initial matter, the Court determines that GEICO's statute of limitations argument is properly before the Court. Rule 15 provides that leave to amend "shall be freely given when justice so requires." N.C. R. Civ. P. 15(a). On a Rule 15 motion, "a trial court may, but is not required to, deny a motion to amend on the basis of futility." *Le Bleu Corp. v. B. Kelley Enters.*, 2014 NCBC LEXIS 66, at \*7 (N.C. Super. Ct. Dec. 9, 2014).

42. Plaintiffs contend that dismissal of their unjust enrichment claim on statute of limitations grounds would "essentially overrule" Judge Caldwell's prior order. (Opp'n 13.) The Court disagrees. This Court has recognized that a superior court judge's prior decision to allow amendment under Rule 15 in the face of a futility defense does not foreclose a different judge's later determination of the same arguments under Rule 12(b)(6) when the prior judge does not provide an explanation for his or her ruling. *See Le Bleu Corp.*, 2014 NCBC LEXIS 66, at \*7 (stating that "Judge Stone's order allowing the Amended Complaint does not indicate that Judge Stone necessarily ruled whether or not the trade secret claim is futile" and while it was "clear that futility was among the other issues Judge Stone was asked to

---

[3] Plaintiffs point to Senior Resident Superior Court Judge Jesse Caldwell's July 25, 2020 order before Business Court designation of this case, (*see* Order Granting Mot. Leave Amend [hereinafter "Trial Court Order"], ECF No. 18.1), in which Judge Caldwell considered whether to allow Plaintiffs to amend their Complaint consistent with their proposed amendments and "with one modification orally requested by Plaintiffs during the hearing to add [GEICO] to the First Amended Complaint's Sixth Claim for Relief for Piercing the Corporate Veil[,]" (Trial Court Order). Judge Caldwell ruled in his discretion and without explanation that Plaintiffs' motion should be granted. (Trial Court Order.)

consider[,] . . . it was not the only issue before the court"). Application of that rule is particularly appropriate here because GEICO was not yet a party to this case when Judge Caldwell heard and decided the earlier Rule 15 motion and therefore did not have an opportunity to be heard. Plaintiffs' protests notwithstanding, North Carolina law does not eliminate GEICO's right to pursue its legal defenses under Rule 12(b)(6) in these circumstances.

43. The Court is similarly unpersuaded by Plaintiffs' contention that GEICO should be equitably estopped from raising its statute of limitations defense against Plaintiffs' unjust enrichment claim. The doctrine of equitable estoppel applies when a party

> by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17 (2004) (citation omitted). "In order for equitable estoppel to bar application of the statute of limitations, a plaintiff must have been induced to delay filing of the action by the misrepresentations of the defendant." *Jordan v. Crew*, 125 N.C. App. 712, 720 (1997) (citing *Duke Univ. v. Stainback*, 320 N.C. 337, 341 (1987)). To survive dismissal under Rule 12(b)(6), "the complaint on its face [must] sufficiently state[ ] a claim for relief to equitably estop [the defendant] from pleading the statute of limitations and statute of repose." *Bryant v. Adams*, 116 N.C. App. 448, 460 (1994).

44. Plaintiffs allege no facts that provide a basis to equitably estop GEICO from asserting its statute of limitations defense. Plaintiffs argue that they did not know which GEICO entity was Foss 2014's investor and that they repeatedly attempted to procure this information from various GEICO entities through the use of subpoenas, only to learn the identity of the correct GEICO entity after the statute of limitations had expired. (Opp'n 3 n.1.) But the Amended Complaint makes no allegation that GEICO engaged in improper conduct or induced Plaintiffs to delay the timely filing of its claim, nor do Plaintiffs plead facts that give rise to a duty requiring GEICO to disclose the entity information Plaintiffs contend they sought. *See, e.g., Comput. Decisions v. Rouse Office Mgmt.*, 124 N.C. App. 383, 387 (1996) (rejecting plaintiff's equitable estoppel argument for failure to disclosure certain intentions or negotiations when "defendants did not have a duty to disclose" such information). As such, Plaintiffs' resort to principles of equitable estoppel necessarily fails on the pleaded facts.

45. Having reached these conclusions, the Court turns to GEICO's contention that Plaintiffs' unjust enrichment claim is time-barred. N.C.G.S. § 1-52 provides a three-year statute of limitations for claims of unjust enrichment arising from contract. N.C.G.S. § 1-52(1); *see also Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 85 (2011) ("A claim for unjust enrichment must be brought within three years of accrual under subsection 1 of [N.C.G.S. §] 1-52." (citation omitted)). Plaintiffs allege that the failure to pay giving rise to this action occurred on March 23, 2016, (*see* Am. Compl. ¶ 75), and Plaintiffs first asserted their claim for unjust enrichment against

GEICO on July 28, 2020. Because the claim was asserted more than three years after the cause of action accrued, Plaintiffs' unjust enrichment claim is time-barred and must therefore be dismissed.

D.   Civil Conspiracy

46.   Plaintiffs assert a claim for civil conspiracy against GEICO based on its "refus[al] to acknowledge the binding nature of certain . . . agreements[.]" (Am. Compl. ¶ 128.) Our courts have long recognized that "there is not a separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690 (2005) (citing *Shope v. Boyer*, 268 N.C. 401, 404–05 (1966); *Fox v. Wilson*, 85 N.C. App. 292, 300 (1987)). Rather, "civil conspiracy is premised on the underlying act." *Harris v. Matthews*, 361 N.C. 265, 273 n.2 (2007). Therefore, when all underlying tort claims against a party are dismissed, the civil conspiracy claim against that party likewise fails. *See, e.g., Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, 211 N.C. App. 343, 350 (2011) ("Where this Court has found summary judgment for the defendants on the underlying tort claims to be proper, we have held that a plaintiff's claim for civil conspiracy must also fail.").

47.   Because the Court has dismissed all underlying claims asserted against GEICO by Plaintiffs, dismissal of Plaintiffs' conspiracy claim necessarily follows.

E.   Piercing the Corporate Veil

48.   Plaintiffs further plead that, although GEICO was not a party to any of the agreements involved in this dispute, GEICO may be held liable for Foss 2014's conduct because GEICO asserted dominion and control over Foss 2014 such that Foss

2014 had no separate will of its own, justifying the piercing of Foss 2014's corporate form to reach GEICO.[4] (Am. Compl. ¶ 132.) GEICO moves to dismiss.

49. In support of its Motion, GEICO argues that Delaware law should control because Foss 2014 is organized under the laws of Delaware, (Am. Compl. ¶ 3), and under Delaware law, Plaintiffs have failed to allege facts supporting a remedy under a piercing the corporate veil theory. (Mem. Supp. Mot. 7.) Plaintiffs argue in response that North Carolina law controls, but, in any event, that they have sufficiently pleaded their piercing the corporate veil claim under either North Carolina or Delaware law. (Opp'n 5, 11.)

50. Our Supreme Court has not yet settled whether North Carolina or a foreign state's law applies when a North Carolina court considers piercing the corporate veil of a foreign corporation. *See Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 252 (2006) (recognizing that "North Carolina courts have not ruled definitively" on choice of law for veil piercing). Nevertheless, relying on the North Carolina Court of Appeals' decision in *Copley Triangle Associates v. Apparel America, Inc.*, 96 N.C. App. 263 (1989), which applied North Carolina law rather than Florida law in piercing the veil of a Florida corporation to achieve personal jurisdiction, this Court has previously applied North Carolina law to a plaintiff's request to pierce the corporate veil of a

---

[4] The Court notes that although Plaintiffs bring their veil piercing theory as a claim, piercing the corporate veil is a remedy, not a separate cause of action. *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *14 (N.C. Super. Ct. July 12, 2017) ("Veil piercing is an equitable remedy[.]" (citing *Ridgeway*, 362 N.C. at 440)); *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2018 NCBC LEXIS 56, at *23 (N.C. Super. Ct. June 5, 2018) ("Veil piercing 'is not a theory of liability' but a form of relief that provides an 'avenue to pursue legal claims against' those 'otherwise shielded by the corporate form.'" (quoting *Green v. Freeman*, 367 N.C. 136, 146, (2013))).

Delaware LLC, *see Insight Health Corp.*, 2018 NCBC LEXIS 56, at *26 n.3.  The Court will do so again here.[5]

51.     Piercing the corporate veil is an extraordinary remedy. *See Green*, 367 N.C. at 145 ("Disregarding the corporate form is not to be done lightly."); *Ridgeway*, 362 N.C. at 438–39 ("[W]hile [a] corporation's separate and independent existence is not to be disregarded lightly, it may be theoretically permissible to look behind the corporate form." (citation and internal quotation marks omitted)).

52.     North Carolina has adopted the instrumentality rule, under which "a corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled." *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8 (1966) (citation omitted).  There are three elements "which support an attack on separate corporate entit[ies]" under this rule: (1) "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the

---

[5] Although the Court applies North Carolina law, the Court would reach the same result under Delaware law.  As in North Carolina, piercing the corporate veil under Delaware law is rarely appropriate.  *See, e.g.*, *Midland Interiors, Inc. v. Burleigh*, Civil Action No. 18544, 2006 Del. Ch. LEXIS 220, at *9 (Del. Ch. Dec. 19, 2006) ("[P]ersuading a Delaware court to pierce the corporate veil is a difficult task.  Absent compelling cause, a court will not disregard the corporate form or otherwise disturb the legal attributes, such as limited liability, of a corporation.").  Piercing the corporate veil "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved[,]" *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968), and "the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors[,]" *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003).  As discussed *infra* under North Carolina law, Plaintiffs' allegations are insufficient to permit a reasonable inference either that Foss 2014 was a sham corporation or that GEICO exerted such control over Foss 2014 that "equitable consideration" requires disregarding Foss 2014's corporate form.

transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own"; (2) "[s]uch control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights"; and (3) "[t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." *Glenn v. Wagner*, 313 N.C. 450, 454–55 (1985) (quoting *B-W Acceptance Corp.*, 268 N.C. at 9).

53. Factors to be considered under North Carolina's rule include: (1) inadequate capitalization, (2) non-compliance with corporate formalities, (3) complete domination and control of the corporation such that it has no independent identity, and (4) excessive fragmentation of a single enterprise into separate corporations. *Id.* at 454; *see generally* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law*, §§ 2-10[2], 2-27–2-36 (7th ed. 2019).

54. Here, Plaintiffs have alleged only that (i) GEICO was Foss 2014's sole customer or investor, (Am. Compl. ¶ 21); (ii) Foss 2014 acted at all times as GEICO's agent, (Am. Compl. ¶ 21); and (iii) Foss 2014's failure to fulfill its payment obligation was a result of GEICO's unwillingness to cooperate and desire to stall payment, (Am. Compl. ¶¶ 46, 48). While Plaintiffs argue that these allegations show that "G[EICO] used its involvement in Foss to take advantage of the tax credits generated by the [p]roject while trying to completely shield itself from any liability for its actions[,]" (Opp'n 11), Plaintiffs' factual allegations are insufficient to permit Plaintiffs' assertion of the veil piercing remedy to survive Rule 12(b)(6) scrutiny.

55.    As pleaded, a reasonable factfinder could not conclude that Foss 2014 was GEICO's alter ego "not only of finances, but of policy and business practice." *Glenn*, 313 N.C. at 455. Nor could a reasonable factfinder conclude that GEICO wholly controlled Foss 2014's actions until Foss 2014 finally made payment in mid-September, particularly given Plaintiffs' allegations that Foss 2014 already possessed the funds and held them in escrow with CSB. (Am. Compl. ¶ 74.) And Plaintiffs' numerous conclusory allegations, all without supporting facts, including that "G[EICO] and Foss exercised complete dominion and control over the business practices/decision of Foss 2014[,]" (Am. Compl. ¶ 132), "Foss 2014 was severely undercapitalized, and totally reliant on G[EICO,]" (Am. Compl. ¶ 133), and GEICO "used such dominion and control over Foss 2014 to engage in the wrongful conduct described herein[,]" (Am. Compl. ¶ 134), are not entitled to weight under Rule 12(b)(6), *Wray*, 370 N.C. at 46.

56.    As a result, Plaintiffs' attempt to invoke the piercing the corporate veil remedy on the pleaded facts fails, and Plaintiffs shall not be entitled to that remedy in this action. And to the extent that Plaintiffs can be seen to have asserted claims against GEICO for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty and constructive fraud, and civil conspiracy as derivative of Foss 2014's liability to Plaintiffs on those same claims—claims which rely for their success on the veil piercing remedy—Plaintiffs' allegations are likewise insufficient to permit those claims to survive under Rule 12(b)(6).

F.   Agency

57.   Plaintiffs attempt to cure their statute of limitations defects by casting Foss 2014 as GEICO's agent.[6] (*See* Mem Opp'n Mot. 10.)  Specifically, Plaintiffs argue that their derivative liability claims against GEICO relate back to the original filing of their Complaint against Foss 2014, rendering them timely, because Foss 2014 was GEICO's agent.[7]

58.   For their support, Plaintiffs seek refuge in the Supreme Court of North Carolina's holding in *Ridgeway*, 362 N.C at 431.  But that decision considered whether the addition of a shareholder under *a theory of piercing the corporate veil* was the untimely addition of a new party or whether the shareholder could be considered the same party as the corporate defendant, permitting relation back to the original filing.  *Id.* at 441.  The Court decided it was the latter, concluding that because "the instrumentality rule allows for the corporate form to be disregarded if the corporation is so operated that it is a mere instrumentality or alter ego of the . . . shareholder[,]" "the corporation and the shareholder [are to be] treated as one and the same person."  *Id.* at 440–41 (emphasis omitted).

59.   Unlike the plaintiffs in *Ridgeway*, Plaintiffs here assert their claims based on an agency theory—that Foss 2014 acted at all relevant times as GEICO's agent.

---

[6] The Court notes that "[a]gency, like piercing the corporate veil, is not itself a cause of action[.]" *Green v. Freeman*, 233 N.C. App. 109, 112 (2014).

[7] Although Plaintiffs do not distinguish among their derivative liability claims, for the reasons set forth in footnote 2 above, the Court considers Plaintiffs' proffered agency theory to be asserted as support for the timeliness of Plaintiffs' claims against GEICO for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and civil conspiracy, but not for constructive fraud.

And unlike piercing the corporate veil, an agency relationship is specifically based on the relationship between two separate persons, not on a theory that two persons are one and the same. *See, e.g.*, *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 277 (defining "agency" as "the relationship which arises from the manifestation of consent *by one person to another* that the other shall act on his behalf and subject to his control, and consent by the other so to act" (emphasis added) (internal quotation marks and citation omitted)). Thus, *Ridgeway* is of no assistance to Plaintiffs, and North Carolina law does not otherwise permit the addition of a claim based on agency to relate back to the filing of the original complaint for statute of limitations purposes. As a result, Plaintiffs' agency theory does not permit their claims against GEICO to avoid dismissal on statute of limitations grounds under Rule 12(b)(6).

V.
CONCLUSION

60.     **WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS** GEICO's Motion to Dismiss and **DISMISSES** Plaintiffs' claims against GEICO **with prejudice**.[8]

**SO ORDERED**, this the 18th day of February, 2021.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[8] Plaintiffs requested at the Hearing that they be afforded the opportunity to replead should the Court grant GEICO's Motion. The Court rejects Plaintiffs' request, however, because Plaintiffs have already amended their original complaint once and because Plaintiffs have not forecasted new factual allegations against GEICO sufficient to survive dismissal under Rule 12(b)(6).