IN THE SUPREME COURT OF NORTH CAROLINA

No. 424A12

FILED 8 NOVEMBER 2013

MICHAEL A. GREEN and DANIEL J. GREEN,
    Plaintiffs

                v.

JACK L. FREEMAN, JR., CORINNA W. FREEMAN, PIEDMONT CAPITAL
HOLDING OF NC, INC., PIEDMONT EXPRESS AIRWAYS, INC., PIEDMONT
SOUTHERN AIR FREIGHT, INC., and NAT GROUP, INC.,
    Defendants

                v.

LAWRENCE J. D'AMELIO, III,
                Third-Party Defendant


    Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel

of the Court of Appeals, ___ N.C. App. ___, 733 S.E.2d 542 (2012), affirming a

judgment entered on 2 June 2010 and an order entered on 8 July 2010, both by

Judge Edwin G. Wilson, Jr., and an order entered on 6 October 2008 by Judge

Ronald Spivey, all in Superior Court, Guilford County.  Heard in the Supreme Court

on 12 March 2013.

    *Thomas B. Kobrin for plaintiff-appellees.*

    *Rossabi Black Slaughter, P.A., by Gavin J. Reardon and T. Keith Black, for
    defendant-appellant Corinna W. Freeman.*

    MARTIN, Justice.


    In this case we are presented with a failed corporate venture and asked what

remedy, if any, is available to plaintiffs.  We hold that plaintiffs did not present

evidence sufficient to establish a breach of fiduciary duty claim and reverse the decision of the Court of Appeals on that issue. We reverse and remand to the Court of Appeals for application of the piercing the corporate veil doctrine to plaintiffs' agency claims.

Defendant Corinna Freeman and her now-deceased husband founded Piedmont Southern Air Freight (Piedmont Southern), a shipping company, and ran it together until he became sick in 2001. That same year, Corinna signed a letter "delegating responsibility and authority for making all corporate, financial, operational and administrative decisions for [Piedmont Southern]" to her son Jack Freeman, another defendant in this case who is not a party to this appeal. Corinna remained owner of the company on the corporate paperwork filed with the Secretary of State. In 2005 Corinna applied to the Secretary of State to have Piedmont Southern reinstated after an administrative dissolution. In that filing, she signed as the owner of Piedmont Southern. Also in 2005, Jack partnered with Larry D'Amelio to create a new shipping company, Piedmont Express Airways (Piedmont Express). Jack and Larry intended to structure Piedmont Express and Piedmont Southern as subsidiaries of a new entity called Piedmont Capital Holding of North Carolina (Piedmont Capital). Jack and Larry met with plaintiff Michael Green to discuss investing in this new venture. Afterward, Michael and his brother Daniel, also a plaintiff here, each gave the venture $200,000, which they believed would serve as both a loan and an investment. Larry signed promissory notes to Michael

and Daniel on behalf of Piedmont Southern, Piedmont Express, and Piedmont Capital (collectively, the Piedmont companies), promising to repay the funds within the earlier of one year or when the cumulative billings of the companies equaled two million dollars. Corinna was not involved in any of the conversations leading up to the transfers of plaintiffs' capital, and plaintiffs did not rely on her when making their decision to invest. Additionally, Corinna's signature was not on any of the loan documents.

Although Jack and Larry apparently intended that Piedmont Capital own Piedmont Southern and Piedmont Express, the articles of incorporation for Piedmont Capital and Piedmont Express did not establish a hierarchy among the three companies. The operating agreement for the three companies similarly grouped the three entities together. Moreover, the corporate names were used interchangeably in corporate communications and discussions between the parties. According to the operating agreement, Jack was CEO and Larry was President of the three companies. The agreement further provided that "[t]he initial Chairperson shall be Corinna W[.] Freeman and Jack L. Freeman Jr." In addition, the agreement identified Corinna as holding thirty-three shares of the combined companies, with a later amendment indicating she held eighty-eight shares. No stockholders or directors meetings were ever held, and stock was never issued. Corinna did not sign the operating agreement, but Jack signed "by Jack Freeman" on a line designated for Corinna on the later amendment. Jack testified that he

never told her about identifying stock in her name or about naming her Chairperson. When plaintiffs asked to meet with Corinna or to learn about her involvement in the companies, Jack told them he had authority to act on her behalf and sign all documents in her name. Jack and Larry both testified that Corinna was not involved in the management of the companies. Corinna did come to the Piedmont offices on several occasions to train the staff and received compensation for her services.

The record contains evidence of several bank accounts operated for the various Piedmont companies. In 2005 a Wachovia business checking account was opened by Corinna as the "CEO/OWNER" of Piedmont Express. A First Citizens checking account and a First Citizens money market savings account were in the name of Piedmont Capital; these two accounts each received one of the Green brothers' $200,000 checks. Funds from these accounts were deposited into a First Citizens checking account for Piedmont Express. An American Express business credit card was issued to "C Freeman, PSA Airline" and was actively used at least between December 2005 and July 2006.

Between February 2006 and June 2006, payments were made on a Wachovia credit card issued to "C Freeman" by eight checks written from the Piedmont Express checking account with First Citizens Bank and signed by "signatory for C. Freeman." In June 2006 three checks from the Piedmont Express Wachovia checking account were signed by Corinna to repay loans. In 2007 Corinna wrote

checks from a BB&T account in her name, totaling over $19,000, to Jack and Piedmont Southern for company expenses. Mortgage and utility payments on a house belonging to Corinna were paid from the Piedmont Express Wachovia checking account.

By June 2006, plaintiffs' $400,000 had all been spent. In December 2006, plaintiffs sued Jack, Larry, Corinna, and the Piedmont companies to recover the funds. Plaintiffs originally claimed that they should be able to pierce the corporate veil and that Corinna, along with Jack and, in some cases, the Piedmont companies, had committed fraud, breach of contract, conversion, and breach of fiduciary duty, engaged in unfair and deceptive practices, and received unjust enrichment. Plaintiffs subsequently amended their complaint to include Larry as a third-party defendant. The trial court granted summary judgment for Corinna on plaintiffs' claims based on fraud, breach of contract, and unfair and deceptive practices, but denied summary judgment for Corinna on plaintiffs' claims based on conversion, unjust enrichment, breach of fiduciary duty, and piercing the corporate veil. Upon plaintiffs' subsequent motion, the trial court allowed plaintiffs to amend the complaint to include claims under the theory that Jack was acting as Corinna's agent.

Thus, when this case went to trial, the claims against Corinna were as follows: agency claims, based on Jack's actions, for fraud, breach of fiduciary duty, and unfair and deceptive practices; personal liability claims for conversion, unjust

enrichment, and breach of fiduciary duty; and personal liability "for the debts and obligations of the Piedmont Companies" through the piercing the corporate veil doctrine. At the end of plaintiffs' presentation of evidence, the trial court dismissed the conversion claim against Corinna. At the close of all evidence, the trial court granted in part Corinna's motion for directed verdict, dismissing the agency claims and the unjust enrichment claim. Thus, as for Corinna, only the breach of fiduciary duty and piercing the corporate veil issues were submitted to the jury. The jury found that Corinna "control[led] [the Piedmont companies] with regard to the acts or omissions that damaged the plaintiffs" and that "plaintiffs [were] damaged by the failure of [Corinna] to discharge her duty as a corporate director or officer." Corinna's post-trial motions for judgment notwithstanding the verdict (JNOV) or a new trial were denied. Corinna then appealed from the trial court's original judgment and its denial of her motions for JNOV and a new trial. Plaintiffs cross-appealed from the trial court's rulings adverse to them.

The Court of Appeals affirmed the trial court's denial of Corinna's motions. *Green v. Freeman*, ___ N.C. App. ___, 733 S.E.2d 542 (2012). In so doing, the court held there was sufficient evidence for a jury to find Corinna liable for breach of fiduciary duty and liable under "plaintiffs' claim for piercing the corporate veil." *Id.* at ___, 733 S.E.2d at 552-54. The court also affirmed the dismissal of plaintiffs' unfair and deceptive practices claim. *Id.* at ___, 733 S.E.2d at 556. The court did not address the merits of plaintiffs' arguments that the trial court erred by

dismissing plaintiffs' agency claims and by not admitting the depositions of defendants, stating, "[A]s we have affirmed the trial court's judgment [regarding plaintiffs' claims based on breach of fiduciary duty and piercing the corporate veil] . . . there is no need to address these additional arguments as we are affirming the judgment for the reasons stated above and consideration of these issues would have no effect upon the outcome." *Id.* at ___, 733 S.E.2d at 556.

The dissenting judge would have held that "plaintiffs failed to adduce evidence of a fiduciary relationship, or evidence that Corinna personally breached any duty to plaintiffs proximately resulting in their harm." *Id.* at ___, 733 S.E.2d at 557 (Calabria, J., dissenting). The dissenting judge also would have held that "since plaintiffs failed to prove Corinna exercised domination and control over Piedmont that would subject her to individual liability, plaintiffs failed to prove her liability for corporate obligations should extend beyond the confines of a corporate separate entity." *Id.* at ___, 733 S.E.2d at 563. Corinna appealed to this Court as of right on the basis of the dissent. We reverse the decision of the Court of Appeals on the breach of fiduciary duty issue, and we remand to that court for consideration of plaintiffs' cross-appeal from the trial court's dismissal of their agency claims against Corinna and the effect of the agency claims on the application of the piercing the corporate veil doctrine. The other issues decided by the Court of Appeals are not before this Court and are not addressed in this opinion.

When considering the denial of a directed verdict or JNOV, the standard of

review is the same. *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991). "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Id.* at 322, 411 S.E.2d at 138 (citation omitted). If "there is evidence to support each element of the nonmoving party's cause of action, then the motion for directed verdict and any subsequent motion for [JNOV] should be denied." *Abels v. Renfro Corp.*, 335 N.C. 209, 215, 436 S.E.2d 822, 825 (1993) (citations omitted). Further, "[i]f, at the close of the evidence, a plaintiff's own testimony has unequivocally repudiated the material allegations of his complaint and his testimony has shown no additional grounds for recovery against the defendant, the defendant's motion for a directed verdict should be allowed." *Cogdill v. Scates*, 290 N.C. 31, 44, 224 S.E.2d 604, 611 (1976). Whether Corinna was entitled to a directed verdict or JNOV is a question of law. *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 720, 693 S.E.2d 640, 643 (2009) (citations omitted), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2456 (2011). We review questions of law de novo. *E.g.*, *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, ___ N.C. ___, ___, 742 S.E.2d 781, 786 (2013).

The first issue before us is whether there was sufficient evidence, as a matter of law, that Corinna breached a fiduciary duty owed to plaintiffs, proximately causing injury to them. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651,

548 S.E.2d 704, 707 (2001) (citations omitted). A fiduciary relationship may arise when " 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " *Id*. (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)).

In North Carolina, directors of a corporation are required to act in good faith, with due care, and in a manner they reasonably believe to be in the best interests of the corporation. N.C.G.S. § 55-8-30 (2011). When these fiduciary duties are breached, a shareholder may sue the offending director in a derivative action. *Id.* § 55-7-40 (2011). The shareholder must "[f]airly and adequately represent[ ] the interests of the corporation in enforcing the right of the corporation." *Id.* § 55-7-41 (2011). The General Assembly has expressly indicated its intent "to avoid an interpretation [of N.C.G.S. § 55-8-30] . . . that would give shareholders a direct right of action on claims that should be asserted derivatively" and to avoid giving creditors a generalized fiduciary claim. N.C.G.S. § 55-8-30 N.C. cmt. (2011); *see* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 14.01[2], at 14-4 (7th ed. 2012) [hereinafter *Robinson on Corporation Law*].

The general rule is that "[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220-21 (1997) (citations and

quotation marks omitted). Shareholders may, however, bring a derivative lawsuit against corporate officers and directors, in which case any damages flow back to the corporation, not to the individual shareholders bringing the action. *Rivers v. Wachovia Corp.*, 665 F.3d 610, 614-15 (4th Cir. 2011) (citations omitted); *see* 2 James D. Cox & Thomas Lee Hazen, *Cox & Hazen on Corporations* § 15.02 (2d ed. 2003) [hereinafter *Cox & Hazen on Corporations*]. Plaintiffs did not bring a derivative suit. Therefore, we examine two exceptions to the general rule: shareholders, creditors and guarantors may bring an individual action against a third party for breach of fiduciary duty when (1) "the wrongdoer owed [them] a special duty" or (2) they suffered a personal injury "distinct from the injury sustained by . . . the corporation itself." *Barger*, 346 N.C. at 659, 661, 488 S.E.2d at 219, 221. Plaintiffs alleged they were both shareholders and creditors. We analyze each alleged position separately.

We begin by determining whether plaintiffs ever became shareholders of the Piedmont companies. "[T]he holder of the shares acquires the status of a shareholder[ ] when they are issued, which is a fact to be determined upon the intent of the parties as indicated by the pertinent corporate resolutions, subscription or like agreement, or other relevant circumstances." *Robinson on North Carolina Corporation Law* § 20.01, at 20-2; *see* N.C.G.S. § 55-6-03(a) (2011). Shares are authorized in the articles of incorporation filed with the Secretary of State, N.C.G.S. § 55-6-01 (2011), but then may be issued by the corporation's board

of directors, *id.* § 55-6-21 (2011); *Cox & Hazen on Corporations* § 16.13, at 1058; *Robinson on North Carolina Corporation Law*, at 20-2 (noting it is "important to fix the issue date of shares precisely by directors' resolutions or in some other definitive manner").

At trial Michael Green testified that he never received any stock and that he did not know whether any stock was put in his name in the company books. The only document in the record mentioning the issuance of stock is the operating agreement, signed by plaintiffs, Larry, and Jack on 22 November 2005, which states, "It is further agreed that Michael Alan Green and Danny Jay Green must remain Shareholders in the Company for a period of 5 years before said shares will be vested." The 2006 amendment to the operating agreement includes the same requirement. Plaintiffs' complaint was filed on 6 December 2006. Plaintiffs presented no evidence or alternative interpretation of the vesting schedule. Accordingly, either because the authorized stock was never issued by a decision of the board of directors or because the stock did not vest in plaintiffs, we conclude that plaintiffs never became shareholders.

When "plaintiff[s'] own testimony has unequivocally repudiated the material allegations of [their] complaint . . . the defendant's motion for a directed verdict should be allowed." *Cogdill*, 290 N.C. at 44, 224 S.E.2d at 611. Because plaintiffs never became shareholders, Corinna could not have owed them, as shareholders, fiduciary duties under either the special duty or the personal injury exception.

Plaintiffs therefore lack standing to bring a claim as shareholders for breach of fiduciary duty.

In addition to alleging they were shareholders, plaintiffs alleged the $400,000 given to the Piedmont companies was a loan. Thus, we next consider whether plaintiffs can recover under the special duty or unique personal injury exception based on the theory of liability that Corinna, as a director or officer, breached a fiduciary duty owed to them as creditors. To recover under the special duty exception, there must be a special duty "that defendant[ ] owed . . . to plaintiffs that was personal to plaintiffs as [creditors] and was separate and distinct from the duty defendant[ ] owed the corporation." *Barger*, 346 N.C. at 661, 488 S.E.2d at 221. When considering claims by shareholders, we have recognized the creation of a special duty "when the wrongful actions of a party induced an individual to become a shareholder; . . . when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation." *Id.* at 659, 488 S.E.2d at 220 (citations omitted). "This list is illustrative; it is not an exclusive list of all factual situations in which a special duty may be found." *Id.* "We apply the same rules for establishing a special duty when plaintiffs are [creditors] as we apply when plaintiffs are shareholders." 346 N.C. at 661, 488 S.E.2d at 221.

Plaintiffs' testimony, standing alone, establishes that none of the scenarios discussed in *Barger* apply. Plaintiffs testified that Corinna was not involved in the

meetings leading up to their $400,000 alleged investment, that they did not rely on any representations made by her when choosing to invest, and that there was almost no personal interaction between Corinna and plaintiffs. In fact, the most contact plaintiffs had with Corinna was seeing her a handful of times and saying nothing more than "hello." Even viewed in the light most favorable to plaintiffs, the evidence of plaintiffs' contact with Corinna does not allow a reasonable inference that they relied on or trusted in her when they chose to invest in the Piedmont companies. While the *Barger* scenarios are not exclusive, the facts of this case do not present an analogous situation meriting the recognition of a fiduciary duty under the special duty exception.

To establish a breach of fiduciary duty under the second exception, plaintiffs had to present evidence that they suffered an injury peculiar or personal to themselves. *Id.* There must be evidence "that the injury suffered by the [creditor] is personal to him and distinct from the injury suffered by the corporation itself." *Id.* The loss of an investment "is identical to the injury suffered by" the corporate entity as a whole. *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 336, 525 S.E.2d 441, 444 (2000); *see also Cox & Hazen on Corporations* § 15.02, at 890. Even when one person contributes a disproportionate amount of the investment and thus bears a correspondingly greater loss, such an occurrence "hardly makes for an 'individual injury.'" *Energy Investors*, 351 N.C. at 336, 525 S.E.2d at 444. Here, plaintiffs' injury is the loss of $400,000. Because plaintiffs'

injury is the same as the injury suffered by the company itself, the evidence was insufficient to support plaintiffs' claim under the personal injury exception.

Plaintiffs have failed to produce evidence showing either that Corinna owed them, as shareholders or creditors, a special duty or that they suffered a personal injury distinct from the injury suffered by the Piedmont companies as a whole. Therefore, as a matter of law, plaintiffs could not assert individual claims that belonged to the company. *Energy Investors,* 351 N.C. at 336, 525 S.E.2d at 444. Accordingly, there was insufficient evidence to support plaintiffs' claim, and Corinna's motions for directed verdict and JNOV should have been granted. *See Abels*, 335 N.C. at 215, 436 S.E.2d at 825. We reverse the decision of the Court of Appeals on this issue.

The second issue Corinna raises on appeal is whether the Court of Appeals erred in holding "the trial court did not err in denying defendant Corinna's motions for a directed verdict and JNOV as to plaintiffs' claims for piercing the corporate veil." *Green*, ___ N.C. App. at ___, 733 S.E.2d at 555 (majority). "The general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 438, 666 S.E.2d 107, 112 (2008) (citation omitted). Piercing the corporate veil sets aside that general rule and allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation. *See Henderson v.*

*Sec. Mortg. & Fin. Co.*, 273 N.C. 253, 160 S.E.2d 39 (1968). The doctrine allows injured parties to bring claims against individuals who otherwise would have been shielded by the corporate form. Courts will pierce the corporate veil "when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Ridgeway Brands*, 362 N.C. at 439, 666 S.E.2d at 112-13 (citations and internal quotation marks omitted). Disregarding the corporate form is not to be done lightly. *Id.* at 438-39, 666 S.E.2d at 112.

The aggrieved party must show that "the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State." *Henderson*, 273 N.C. at 260, 160 S.E.2d at 44 (citations omitted). Evidence upon which we have relied to justify piercing the corporate veil includes inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records. *Glenn v. Wagner*, 313 N.C. 450, 455-58, 329 S.E.2d 326, 330-32 (1985) (citations omitted). Many of those elements are facially present here. The record contains evidence that the names of the Piedmont companies were used interchangeably; no shareholders or directors meetings were ever held; and funds from corporate accounts were used to pay personal expenses, such as a home mortgage and utility

bills.

After the fact finder determines that the corporate veil should be pierced—in other words, that the corporate identity should be disregarded—the next inquiry is whether a noncorporate defendant may be held liable for her personal actions as an officer or director. To succeed in this inquiry, plaintiffs must present evidence of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 455, 329 S.E.2d at 330 (citation and quotation marks omitted).

In this case there was evidence, when taken in the light most favorable to plaintiffs, from which a jury could conclude that Corinna exercised domination and control over the Piedmont companies. Despite Corinna's designation as Chairperson, no shareholders or directors meetings were ever held. Her name was on a corporate credit card account and on at least one of the corporate checking

accounts. She is the undisputed owner of Piedmont Southern and is designated in corporate documents as majority shareholder of the Piedmont companies. Corinna wrote checks totaling over $19,000 from a BB&T account in her name to Jack and Piedmont Southern for company expenses. Finally, mortgage and utility payments on a house belonging to Corinna were paid from a Piedmont Express checking account.

But sufficient evidence of domination and control establishes only the first element for liability. There must also be an underlying legal claim to which liability may attach. *Id.*; *see Whitehurst v. FCX Fruit & Vegetable Serv., Inc.*, 224 N.C. 628, 637, 32 S.E.2d 34, 40 (1944). The only legal claim against Corinna considered by the jury was breach of fiduciary duty, which we have held was erroneously submitted to the jury. Plaintiffs' complaint stated other claims against Corinna, but they were dismissed by the trial court. Plaintiffs appealed the dismissal of their agency claims against Corinna to the Court of Appeals, but the court did not address the merits of that portion of the appeal because the court affirmed the trial court's judgment regarding plaintiffs' claims for breach of fiduciary duty and piercing the corporate veil. *Green*, ___ N.C. App. at ___, 733 S.E.2d at 556. Without these agency claims, however, there was no legal claim still providing a basis for liability.

The doctrine of piercing the corporate veil is not a theory of liability. Rather, it provides an avenue to pursue legal claims against corporate officers or directors

-17-

who would otherwise be shielded by the corporate form. Without the agency claims serving as the underlying wrongs that proximately caused plaintiffs' harm, evidence of domination and control is insufficient to establish liability. In other words, if the trial court properly dismissed plaintiffs' agency claims, it is irrelevant whether Corinna exercised domination and control over the Piedmont companies. On the other hand, if the trial court erred in dismissing the agency claims, the question remains whether plaintiffs may recover against Corinna on those claims through the piercing the corporate veil doctrine. Therefore, we reverse and remand to the Court of Appeals for a determination of whether the trial court erred in granting Corinna's motion for a directed verdict on plaintiffs' agency claims for fraud and breach of fiduciary duty.

In summary, plaintiffs' evidence on their breach of fiduciary duty claim was insufficient as a matter of law. Additionally, plaintiffs' agency claims are the only remaining claims to which personal liability may attach under the piercing the corporate veil doctrine. Accordingly, the decision of the Court of Appeals is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.