Harris v. Ten Oaks Mgmt. LLC, 2022 NCBC 29.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 13907

JORDAN HARRIS,

        Plaintiff,

v.

TEN OAKS MANAGEMENT, LLC;
ECO DIGITAL HOLDINGS, LLC;
and SSE SERVICE HOLDINGS,
LLC,

        Defendants.

**ORDER AND OPINION
ON PARTIAL MOTION TO
DISMISS AMENDED COMPLAINT**

1.      Jordan Harris is a former employee of Ten Oaks Management, LLC. In this action, Harris alleges that Ten Oaks breached his employment agreement by withholding compensation that he had earned. He has also named SSE Service Holdings, LLC and Eco Digital Holdings, LLC as defendants, claiming that they are alter egos of Ten Oaks.

2.      SSE and Eco Digital have moved for dismissal under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, the Court **GRANTS** the motion.

> *Hull & Chandler, P.A., by Armand Joseph Volta and Nathan M. Hull, for Plaintiff Jordan Harris.*
>
> *Moore & Van Allen PLLC, by Karin M. McGinnis and Caroline F. Savini, for Defendants Ten Oaks Management, LLC, Eco Digital Holdings, LLC, and SSE Service Holdings, LLC.*

Conrad, Judge.

# I.
# BACKGROUND

3.     The Court does not make findings of fact on a motion to dismiss.  The following background assumes that the allegations of the amended complaint are true.

4.     Ten Oaks is a private equity firm that invests in corporate divestitures. Harris worked for Ten Oaks for less than six months in mid-2020.  His job entailed sourcing deals for the firm, and his compensation depended in part on how successful he was in doing so.  Each deal that Harris sourced was supposed to earn him $5,000 upon acceptance of a letter of intent and another $10,000 upon closing.  (*See* Am. Compl. ¶¶ 21, 24, 25, ECF No. 14.)  He was also supposed to "receive 5% of Ten Oaks' equity share in any company [he] sources." (Am. Compl. Ex. 1.)

5.     This incentive-based compensation scheme has led to friction between the parties.  Harris claims that he sourced—but was not paid for—a highly profitable deal that closed in late 2020.  The deal involved a technology company, ScanSource, that wanted to sell its European assets.  Harris met with a ScanSource representative that summer and pitched Ten Oaks as a potential buyer.  Then, over the next few months, Ten Oaks made a formal bid, secured a letter of intent, and closed a deal to buy ScanSource's European assets.  To complete the transaction, Ten Oaks formed SSE as a holding company, and SSE executed a purchase agreement with ScanSource.  (*See* Am. Compl. ¶¶ 36–42, 47, 50–52.)

6.     Before the ScanSource deal closed, Ten Oaks fired Harris.  Ten Oaks assured him at the time that it would honor the compensation terms in his

employment agreement. But, Harris alleges, the firm didn't follow through. All that he has received for his role in the deal is a $5,000 payment made from an account held by Eco Digital (which, like SSE, is owned by Ten Oaks). He contends that $10,000 more and five percent equity in SSE were due upon closing and have yet to be paid. (*See* Am. Compl. ¶¶ 27, 28, 45, 47, 48, 55.)

7.  Through this litigation, Harris seeks to recover the full amount that he believes he is owed for the ScanSource deal. He claims that Ten Oaks breached his employment agreement. He also claims that SSE and Eco Digital are alter egos of Ten Oaks such that it is equitable to pierce the corporate veil and hold them liable for its breach. (*See* Am. Compl. ¶¶ 29–32, 50, 54, 63–68, 73.)

8.  SSE and Eco Digital have moved for dismissal. Their motion is fully briefed, and the Court held a hearing on 29 March 2022. (*See* ECF No. 23.) The motion is ripe for determination.

## II.
## ANALYSIS

9.  Dismissal under Rule 12(b)(6) is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). The Court must treat the well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g., Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). But the Court need not accept

as true any conclusions of law or unwarranted deductions of fact. *See, e.g., Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017).

10. Breach of contract is Harris's only claim for relief. He does not assert that SSE and Eco Digital are parties to the contract at issue or that they committed any breach themselves; rather, he seeks to pierce the corporate veil and hold them liable for an alleged breach by Ten Oaks. In their motion to dismiss, SSE and Eco Digital contend that Harris's allegations, even if true, are not adequate to pierce the veil.

11. Before turning to the merits, the Court considers a threshold question: are veil-piercing disputes governed by the law of the forum or the law of the place of incorporation? Our appellate courts "have not ruled definitively" one way or the other. *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 252 (2006). Because Ten Oaks, SSE, and Eco Digital are all Delaware companies, there is a reasonable argument that Delaware law should apply under the internal affairs doctrine. But neither side has suggested that Delaware's veil-piercing law differs from North Carolina's in any relevant way or that the choice affects the outcome. Thus, there is no need to decide the choice-of-law issue now. *See, e.g., Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC LEXIS 15, at *25 & n.5 (N.C. Super. Ct. Feb. 18, 2021) (reaching same result in veil-piercing dispute under Delaware and North Carolina law).

12. The general rule—in Delaware, in this State, and everywhere else—is that "a corporation is treated as distinct from its shareholders." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 438 (2008); *see also Buechner v.*

*Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686–87 (Del. 1959). It follows that the shareholders (or the members, in the case of an LLC) are not personally liable for the debts of the corporation. Likewise, the corporation is not liable for the debts of its shareholders.

13. To pierce the corporate veil is to set aside the corporate form and the protections that go along with it. In its traditional form, veil piercing "allows a plaintiff to impose legal liability for a corporation's obligations . . . upon some other company or individual that controls and dominates a corporation." *Green v. Freeman*, 367 N.C. 136, 145 (2013). This is "not to be done lightly." *Id.* Courts disregard the corporate form—and impose liability on the corporation's owners—only "when necessary to prevent fraud or to achieve equity." *Ridgeway Brands*, 362 N.C. at 439 (citation and quotation marks omitted); *see also Charter Commc'ns Operating, LLC v. Optymyze, LLC*, 2021 Del. Ch. LEXIS 4, at *73 (Del. Ch. 2021) (describing veil piercing as an "extraordinary equitable remedy").

14. Harris has asserted a less common and more controversial form of veil piercing. He seeks to impose liability on two companies (SSE and Eco Digital) for the acts of their owner (Ten Oaks), rather than the other way around. Reverse piercing, as this is known, is an extension of traditional piercing but poses concerns, such as potential harm to innocent co-owners of the company, that traditional piercing does not. *See Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021); *see also Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). It is fair to say that the contours of reverse piercing are poorly developed. What is

clear, though, is that a plaintiff asserting a theory of reverse piercing must, at a minimum, begin by pleading the same elements that are necessary to establish traditional piercing. *See, e.g., Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 650 (2009); *Cold Springs Ventures, LLC v. Gilead Sciences, Inc.*, 2015 NCBC LEXIS 1, at *18–19 (N.C. Super. Ct. Jan. 6, 2015); *Manichaean Capital*, 251 A.3d at 713.

15. One essential element is control of the corporate entity—"not mere majority or complete stock control, but complete domination" that deprives the entity of any "separate mind, will or existence of its own." *Green*, 367 N.C. at 145; *see also Atl. Tobacco Co. v. Honeycutt*, 101 N.C. App. 160, 164 (1990). Also essential is the use of that control to commit a fraud or similar wrong. *See Green*, 367 N.C. at 146; *Atl. Tobacco*, 101 N.C. App. at 164. The allegations must show that "the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State." *Green*, 367 N.C. at 145.

16. Harris's allegations come nowhere close to the mark. He alleges, for example, that Ten Oaks owns SSE and Eco Digital and that all three companies have the same executive officers. (*See, e.g.*, Am. Compl. ¶¶ 31, 32, 54, 66, 67.) But common ownership and management, without more, do not equate to the kind of complete domination needed to show that one entity is another's puppet. *See, e.g., Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 548 (2007); *Cold Springs Ventures*, 2015 NCBC LEXIS 1, at *18. Missing are allegations of excessive fragmentation,

siphoning of funds, failure to observe corporate formalities and maintain records, or any other conduct that typically characterizes abuse of the corporate form.

17. Although Harris questions whether Ten Oaks is adequately capitalized, his allegations amount to conjecture and nothing more. Harris's chief concern is that he will not be able to recover the fruits of the ScanSource deal because Ten Oaks is using SSE to shield those assets from him. (*See* Am. Compl. ¶¶ 71, 74.) This is an empty concern. In his prayer for relief, Harris does not demand any assets that SSE bought from ScanSource. Rather, he demands "a 5% interest *in SSE*," which Ten Oaks possesses and could deliver if required. (Am. Compl. 11 (emphasis added); *see also* Am. Compl. ¶¶ 56, 68 (alleging that Ten Oaks owns SSE).) Harris also speculates that Ten Oaks is undercapitalized because he was paid out of Eco Digital's bank account during his employment. Even if true, this arrangement says little about whether Ten Oaks is or is not adequately capitalized.

18. All other references to control in the amended complaint are makeweight. Harris simply parrots the legal standard, alleging that Ten Oaks had "dominion and control" over SSE and Eco Digital, that it exercised "complete domination" over them, and that it operated them "as mere instrumentalities or alter egos." (*E.g.*, Am. Compl. ¶¶ 29, 68, 72.) Courts routinely disregard these sorts of conclusory assertions and rote recitations of legal elements. *See, e.g., Loray Master Tenant*, 2022 NCBC LEXIS 1, at *21–22; *KNC Techs., LLC v. Tutton*, 2019 NCBC LEXIS 72, at *29–30 (N.C. Super. Ct. Oct. 9, 2019).

19. The Court further concludes that, even if Harris had adequately alleged domination and control, he has not alleged the use of that control to commit a fraud or wrong. In his opposition brief, Harris devotes a single paragraph to this element. He argues that the wrong at issue is Ten Oaks's breach of contract but does not cite any allegations to show that Ten Oaks used its corporate control of SSE and Eco Digital to perpetrate the breach. (*See* Opp'n 12, ECF No. 27.) "Where corporate control does not result in an underlying wrong, a veil-piercing claim may be dismissed at the Rule 12(b)(6) stage." *Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, at *29 (N.C. Super. Ct. Jan. 28, 2015).

20. Moreover, our courts rarely pierce the veil in contract cases. The Court of Appeals has rejected the argument that a breach of contract, "in itself, can amount to a wrongdoing to meet the second element of the [instrumentality] test." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 440 (2012). The allegations must show some "indicia of fraudulent or inequitable conduct" apart from the breach: "a showing, for example, that the puppet entity was created for the purpose of entering into the relevant contract or used as a means to unjustly insulate another from liability." *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2018 NCBC LEXIS 84, at *12–13 (N.C. Super. Ct. Aug. 15, 2018); *see also EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 Del. Ch. LEXIS 127, at *52 (2008) (observing that a "breach of contract may be unjust or wrongful" but that "the requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself").

21.     The opposition brief does not address this case law or cite any allegations to show fraudulent conduct apart from the breach.  As best the Court can tell, Harris's theory appears to be that Ten Oaks aimed to insulate itself from liability by creating SSE for the sole purpose of buying ScanSource's European assets.  (*See* Am. Compl. ¶¶ 51, 71.)  This is untenable.  Harris's employment agreement promises "5% of Ten Oaks' equity share in any company [he] sources," (Am. Compl. Ex. 1), and he has demanded exactly that in the form of "a 5% interest in SSE," (Am. Compl. 11).  The creation of SSE and its role as buyer in the ScanSource deal do not insulate Ten Oaks from potential liability for its alleged breach or from the relief sought in this case.

22.     Piercing the corporate veil "is a strong step: Like lightning, it is rare and severe." *Ridgeway Brands*, 362 N.C. at 439 (cleaned up).  Harris has not adequately alleged facts to support such an extraordinary equitable remedy.  And because he has not claimed that SSE and Eco Digital are liable under any other theory, there is no basis to keep them as defendants.

## III.
## CONCLUSION

23.     For these reasons, the Court **GRANTS** the motion to dismiss.  In its discretion, the Court **DISMISSES** the claims against SSE and Eco Digital **without prejudice**.

    **SO ORDERED**, this the 20th day of June, 2022.


                                  /s/ Adam M. Conrad
                                  Adam M. Conrad
                                  Special Superior Court Judge
                                   for Complex Business Cases