Hartsell v. MindPath Care Ctrs., N.C., PLLC, 2022 NCBC 66.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

MARY HARTSELL,

        Plaintiff,

    v.

MINDPATH CARE CENTERS, NORTH CAROLINA, PLLC f/k/a CAROLINA PARTNERS IN MENTAL HEALTHCARE, PLLC; MISO, LLC; STANLEY MONROE; and YVONNE MONROE,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 4170

**ORDER AND OPINION ON DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

1. **THIS MATTER** is before the Court on Defendants MindPath Care Centers, North Carolina, PLLC, MISO, LLC, Stanley Monroe, and Yvonne Monroe's, (collectively, "Defendants"), Motion for Partial Dismissal of Plaintiff's First Amended Complaint, or in the alternative, Defendants' Motion For Partial Judgment on the Pleadings ("Motion") (ECF No. 40).

2. The Court, having considered the Motion, the briefs supporting and opposing the Motion, the parties' arguments at a hearing held on 25 August 2022, and other relevant matters of record, concludes for the reasons stated below that the Motion should be **GRANTED** and that Plaintiff's Fourth, Fifth and Sixth Claims for relief in her Amended Complaint should be **DISMISSED with prejudice**.

*Connors Morgan, PLLC, by Scott C. Meyers, for Plaintiff Mary Hartsell.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Jackson W. Moore Jr. and Amelia Serratt, for Defendants MindPath Care Centers North Carolina, PLLC, MISO, LLC, Stanley Monroe, and Yvonne Monroe.*

Earp, Judge.

## I.    FACTUAL BACKGROUND

3.    When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"), the Court does not find facts, but rather it recites the facts as alleged.  The following facts are drawn from Plaintiff's First Amended Complaint ("Am Compl.") (ECF No. 39.)

4.    Defendant Mindpath Care Centers, North Carolina, PLLC ("Mindpath") is a professional healthcare organization providing mental and behavioral care services in North Carolina.  Until 2019, the company was known as Carolina Partners in Mental Healthcare, PLLC ("CPMH").[1]  (Am. Compl. ¶¶ 2, 8, 11.)

5.    Plaintiff Mary Hartsell is a board-certified Family Nurse Practitioner and Psychiatric and Mental Health Nurse Practitioner.  (Am. Compl. ¶ 1.)  Plaintiff signed both an operating agreement and a participating provider agreement to become a member, minority interest holder, and employee of Mindpath in April 2001.  (Am. Compl. ¶¶ 11–13.)

6.    Defendant MISO, LLC ("MISO") is a North Carolina limited liability company.  (Am. Compl. ¶ 3.)  MISO is owned and controlled by Stanley and Yvonne

---

[1]In this Order and Opinion, the Court refers to the entity that was CPMH prior to 2019 and Mindpath after 2019 as "Mindpath."

Monroe, along with their brother, Steven Monroe. It performs billing and administrative functions for Mindpath. (Am. Compl. ¶ 9.) Plaintiff was not a member of MISO. (Am. Comp. ¶ 15.)

7. Defendant Stanley Monroe ("Stanley") is president of Mindpath but is not alleged to be a member of that entity. Stanley is a managing member of MISO. (Am. Compl. ¶ 4.)

8. Defendant Yvonne Monroe ("Yvonne") is Stanley's sister. Yvonne is a member of both Mindpath and MISO. (Am. Compl. ¶ 5.)

9. Plaintiff agreed to join Mindpath after "Defendants" promised that her take-home pay would be 50% of Mindpath's monthly gross collections from her clinical work. The other 50% of her gross collections was to be used by Mindpath to pay overhead and expenses. (Am. Compl. ¶ 13.)

10. Mindpath paid MISO for billing and overhead. (Am. Comp. ¶ 14.) According to Plaintiff, Stanley and Yvonne, both of whom owned interests in MISO, concealed the terms and details of "insider transactions" between Mindpath and MISO. (Am. Comp. ¶¶ 16–18.)

11. Plaintiff often billed in excess of 200 clinical hours per month, but her monthly statements showed large deductions in categories described only as "Practice Management," "Global," and "Local," resulting in Plaintiff's take-home pay being "well below the 50% of her gross receipts as she had been promised." (Am. Comp. ¶¶ 19–21.)

12.     Plaintiff addressed the matter with Stanley, who did not give her satisfactory explanations for how the deducted funds were being used and "concealed information from [Plaintiff] from which she could ascertain the circumstances." (Am. Comp. ¶ 22.)

13.     Plaintiff was never asked to approve an agreement between Mindpath and MISO, and she was never given detailed information about "these interested insider transactions between MISO and Mindpath." (Am. Comp. ¶ 23.)

14.     After 16 years as a "partner"[2] at Mindpath, Plaintiff gave notice of her resignation, effective 30 November 2017. (Am. Compl. ¶ 24.) She requested that her ownership interest in the PLLC be redeemed. (Am. Compl. ¶¶ 25–26.)

15.     Plaintiff sent Stanley several emails and letters requesting that Mindpath redeem her "partnership interests." Stanley promised Plaintiff that she would eventually be paid, but he never provided specifics. (Am. Compl. ¶¶ 26–27.)

16.     Instead, Plaintiff alleges that Stanley "engaged in a pattern of deception and obfuscation," first telling Plaintiff that Mindpath was involved in legal proceedings that prevented the redemption, then falsely accusing Plaintiff of improperly withdrawing from Mindpath, and finally claiming that Mindpath had adopted a policy not to redeem the interests of withdrawing partners. (Am. Compl. ¶¶ 27–30.)

17.     Stanley also allegedly threatened Plaintiff by accusing her of "cost[ing] [Mindpath] more than the value of her partnership interest" but said that Mindpath

---

[2] Although she was a member in a PLLC, Plaintiff apparently referred to herself as a "partner" and her interest as a "partnership interest."

would forgive her "debt" if she agreed to give up her right to have her ownership interest redeemed. (Am. Comp. ¶ 31.)

18. On 4 April 2018, Plaintiff made a demand pursuant to N.C.G.S. § 57D-3-04 for records from which Plaintiff could determine the value of her ownership interest. (Am. Comp. ¶ 32.) Mindpath responded that Plaintiff's interest was worth over $9,000, but "falsely claim[ed] that Plaintiff had actively solicited Mindpath's patients to leave [Mindpath]" in breach of her fiduciary obligations causing damage to the PLLC. (Am. Comp. ¶¶ 33-34.) As a result, Mindpath refused to provide the requested records. (Am. Comp. ¶ 35.)

19. Plaintiff responded on 7 May 2018, denying that she had breached any obligation to Mindpath and again requesting company records to calculate the value of her interest. Mindpath provided a From K-1 but refused to provide any other records. (Am. Comp. ¶¶ 36–37.)

## II.    PROCEDURAL HISTORY

20. Plaintiff initiated this action on 29 March 2021. (ECF No. 1.) On 7 January 2022, she moved to amend her Complaint. (ECF No. 30.) The Court granted the motion in part by Order entered 8 April 2022. (ECF No. 38.) Plaintiff then filed her First Amended Complaint on 19 April 2022.

21. In the First Amended Complaint, Plaintiff asserts claims against Mindpath for failure to respond to her record demand and for breach of the PLLC's operating agreement. (Am. Compl. ¶¶ 38–48.) Count Three asserts that Stanley, as president of Mindpath, breached a fiduciary duty to Plaintiff when he refused to

redeem her membership interest in the PLLC. (Am. Compl. ¶¶ 49–55.) Count Four, asserted against both Stanley and Yvonne, alleges that they breached their fiduciary duty to Plaintiff when, as an officer and a member of Mindpath, respectively, they diluted her interest by transferring money from Mindpath to MISO in "self-interested transactions" and then denied Plaintiff access to the financial records. (Am. Compl. ¶¶ 56–67.) Finally, Count Five of the Amended Complaint alleges that all of the Defendants, including Mindpath and MISO, engaged in constructive fraud. (Am. Compl. ¶¶ 68–76.)

22. On 18 May 2022, Defendants filed this Motion seeking to dismiss Plaintiff's third, fourth and fifth claims for relief pursuant to Rules 12(b)(1) and 12(b)(6). The Motion was fully briefed, and the Court entertained arguments at a hearing held on 25 August 2022. (*See* ECF No. 48.) The Motion is now ripe for disposition.[3]

### III.    LEGAL STANDARD

#### A. <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

23. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under

---

[3] Prior to the filing of this Motion, in response to the initial Complaint, Defendants filed a partial motion to dismiss pursuant to Rule 12(b)(6). However, because it was filed after Defendants' answer, the partial motion to dismiss was denied as untimely. (See Order, ECF No. 38.) Thereafter, however, Plaintiff filed an Amended Complaint, permitting Defendants to plead anew in response. This time Defendants timely filed their motion to dismiss, (ECF No. 40), prior to the filing of their answer, (ECF No. 42.) The Court therefore addresses the Motion pursuant to Rule 12(b)(6), rather than Rule 12(c).

some legal theory, whether properly labeled or not." *Harris v. NCNBNat'l Bank,* 85 N.C. App. 669, 670 (1987) (citation omitted). "[A] statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought." *Sutton v. Duke,* 277 N.C. 94, 102 (1971) (internal quotation omitted).

24. Conversely, "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

25. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.,* 174 N.C. App. 266, 274 (2005) (citation and quotation marks omitted).

B. **Motion to Dismiss Pursuant to Rule 12(b)(1)**

26. As an additional basis for dismissal of Counts Four and Five, Defendants argue that Plaintiff does not have standing and, therefore, that the Court lacks subject matter jurisdiction. They contend that the claims are derivative, not direct, and they observe that Plaintiff failed to make the statutorily required demand before filing suit. *See* N.C.G.S. § 57D-8-01(a)(2).

27. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324 (2002) (citation omitted). It refers to whether a party has "sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626 (2002).

28. Prior to asserting a derivative claim, an LLC member must have:

> made written demand on the LLC to take suitable action, and either (i) the LLC notified the member that the member's demand was rejected, (ii) 90 days have expired from the date the demand was made, or (iii) irreparable injury to the LLC would result by waiting for the expiration of the 90-day period.

N.C.G.S. § 57D-8-01(a)(2).

29. "The challenge to the adequacy of any pre-suit demand is, *inter alia*, a challenge to the Court's subject matter jurisdiction over the derivative claim. *Barefoot v. Barefoot*, 2022 NCBC LEXIS 8, at \*\*9 (N.C. Super. Ct. Feb. 2, 2022) (*citing Finley v. Brown*, 2017 NCBC LEXIS 79, at \*\*8 (N.C. Super. Ct. Sept. 1, 2017). The reason for the demand requirement is to "give an LLC the opportunity 'to remedy the alleged problem without resort to judicial action, or, if the problem cannot be remedied without judicial action, to allow the [LLC], as the true beneficial party, the opportunity to bring suit first against the alleged wrongdoers.' " *Id*. at \*\*20 (*quoting Zoutewelle v. Mathis*, 2018 NCBC LEXIS 95, at \*18 (N.C. Super. Ct. Sept. 13, 2018)).

30. The burden is on Plaintiff to prove the existence of subject matter jurisdiction. *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113 (2002). Absent that proof, the Court is required to dismiss the action. *See Sarda*

*v. City/Cnty. of Durham Board of Adjustment*, 156 N.C. App. 213, 215 (2003) ("If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction." (citation omitted)); N.C. R. Civ. P. 12(h)(3).

## IV. Analysis

### A. <u>Breach of Fiduciary Duty</u>

31. Each of the three claims at issue turns on whether a fiduciary duty is owed by the implicated Defendant(s) to Plaintiff. *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *23 (N.C. Super. Ct. Oct. 2, 2017) (Although breach of fiduciary duty and constructive fraud are distinct causes of action, "an essential element of each claim is the existence of a fiduciary relationship.").

32. To state a claim for breach of fiduciary duty, Plaintiff must plead the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See Green v. Freeman*, 367 N.C. 136, 141 (2013). Constructive fraud requires that Plaintiff plead, in addition, that Defendants sought to benefit themselves through the breach. *See White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294 (2004).

33. "[A] fiduciary relationship is generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (quoting *Green*, 367 N.C. at 141). "North Carolina recognizes two types of fiduciary relationships: *de*

*jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019).

34. LLCs are creatures of contract, and the members may choose to impose fiduciary duties on one another by agreement. *See, e.g., Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *10–11 (N.C. Super. Ct. Aug. 7, 2017) ("The rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships."); *see also* N.C.G.S. § 57D-2-30(a). Absent such an agreement, however, the general rule is that members of an LLC "do not owe a fiduciary duty to each other[.]" *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473 (2009).

35. Plaintiff conceded at the hearing that she is not pursuing a claim for breach of a *de jure* fiduciary duty, and indeed she does not allege the existence of a *de jure* fiduciary relationship. Likewise, there is no allegation that a fiduciary duty was imposed by an operating agreement. Consequently, the Motion turns on whether, given the facts alleged, a *de facto* fiduciary duty existed between Plaintiff and any of the Defendants.

36. "The standard for finding a *de facto* fiduciary relationship is a demanding one: Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 636 (2016) (citation

and internal quotation marks omitted).  Mere influence over another's affairs is insufficient.  *See Id.*

37.  With respect to Count Three, Plaintiff argues that Stanley "held all the financial power and technical know-how behind the Mindpath-MISO transactions, membership redemption, and Plaintiff's compensation under the Provider Agreement."  Therefore, she contends, the *Lockerman* standard has been met. (Pl.'s Br. Opp'n to Mot. ["Pl.'s Br."] 7, ECF No. 43.)

38.  With respect to Count Four, Plaintiff argues that Stanley, as president of Mindpath and an owner of MISO, and Yvonne, as an owner of both Mindpath and MISO, worked together to funnel money from Mindpath to MISO by "orchestrat[ing] a series of insider transactions between the two companies." (Pl.'s Br. 7).  Plaintiff contends that she was never asked for input or given insight into the details of these transactions. (Pl.'s Br. 2.)  Instead, Plaintiff contends that Stanley and Yvonne initiated a "self-perpetuating scheme" in which they denied Plaintiff access to corporate records, threatened her with a lawsuit, and used MISO to "further insulate themselves from discovery."  She contends that this scheme, when taken as a whole, gives rise to fiduciary duties owed by Stanley and Yvonne to Plaintiff.  (Pl.'s. Br. 5–7).  In making this argument, Plaintiff asks the Court to broadly define the concept of a fiduciary relationship, noting that it "need not be legal; it may be moral, social, domestic or merely personal. " (Pl.'s Br. 6) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931).

39. Defendants contend that Plaintiff's argument with respect to Stanley expands on the allegations in the Complaint, which themselves are too conclusory to support a conclusion that Stanley had sufficient control over Mindpath to owe Plaintiff a *de facto* fiduciary duty.[4] They further argue that MindPath is a member-managed LLC and, although Stanley is not a member-manager, Plaintiff is. (Defs.' Reply Mem. Supp. Mot. ["Defs.' Reply Br."] 3–4, ECF No. 44.) It follows, according to Defendants, that Stanley "could not have held all of MindPath's financial power or technical information," and therefore could not have "held all the cards."

40. As for Stanley and Yvonne acting in concert, Defendants argue that there is only one allegation in the Amended Complaint that speaks to their combined control over Mindpath. They contend that allegation—"At all times relevant to this Complaint, Mindpath and MISO were operated and controlled by Stanley and Yvonne Monroe," (Am. Comp. ¶ 10)—is merely conclusory and need not be accepted as true for purposes of the Motion. (Defs' Reply Br. 2, fn 1.)

41. The Court agrees that Plaintiff does not sufficiently allege that Stanley, either alone or in combination with Yvonne, exercised sufficient dominion or control over Mindpath to owe fiduciary duties to Plaintiff. Stanley may have wielded power as an officer of Mindpath, but he was not a member-manager, and there is no allegation that Plaintiff was stripped of her authority as a member-manager by the

---

[4] Defendants correctly observe that, under Rule 12(b)(6), the Court must limit its consideration to the allegations that appear in the Amended Complaint and cannot expand those allegations to encompass the arguments in Plaintiff's brief. It is established law that the Court must consider the Amended Complaint as plead and not as argued by counsel. *See e.g., Loray Master Tenant, LLC v. Foss N.C. Mill Credit 2014 Fund I, LLC*, 2021 NCBC LEXIS 15, at *12 (N.C. Super. Ct. Feb. 18, 2021).

PLLC's operating agreement. Using the *Lockerman* analogy, her status as a member gave Plaintiff "cards" to play. Furthermore, Plaintiff's conclusory allegation that Stanley and Yvonne together controlled Mindpath lacks factual support in her Amended Complaint. A conclusory allegation, standing alone, cannot stave off a Rule 12(b)(6) challenge. *See e.g., Meyer v. Walls*, 347 N.C. 97, 114 (1997) (conclusory allegations are insufficient to withstand a motion to dismiss).[5]

42. Finally, citing *Richardson v. Utili-Serve, LLC*, 2020 NCBC LEXIS 135, at **11 (N.C. Super. Ct. Nov. 17, 2020), Plaintiff argues that the holder of a majority interest who exercises control over the LLC owes a fiduciary duty to the minority interest members. (Pl.'s Br. 6.) Critically, however, while Plaintiff alleges that Stanley and Yvonne "operated and controlled" both Mindpath and MISO (Am. Compl. ¶ 10), she does not allege that Yvonne, or even Stanley and Yvonne together, held a majority interest in Mindpath. Rather, Plaintiff acknowledges that Stanley owns no interest in Mindpath. (Am. Compl. ¶ 17.) Absent allegations of a controlling ownership interest, *Richardson* does not support Plaintiff's claim. *See e.g.*, *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *17 (N.C. Super Ct. June 19, 2019) ("As a general rule, members of an LLC do not owe a fiduciary duty to one another, but in some circumstances, 'a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members.' ") (quoting *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016)).

---

[5] Moreover, Plaintiff can scarcely argue that she reposed "special confidence" in Stanley or Yvonne Monroe. To the contrary, the allegations reveal a growing dissatisfaction and loss of trust. (See e.g., Am. Comp. ¶¶ 22-23, 62-63.)

43. "Without the existence of a fiduciary relationship there can be no claim for breach." *Bourgeois v. Lapelusa*, 2022 NCBC LEXIS 111, at **15 (N.C. Super. Ct. 2022). Because the Court determines that Plaintiff's allegations do not give rise to a *de facto* fiduciary duty, Plaintiff's Motion to Dismiss Plaintiff's Third and Fourth Claims for Relief is **GRANTED**, and Plaintiff's Third and Fourth Claims for Relief are **DISMISSED** with prejudice.

B. **Constructive Fraud**

44. Count Five is a claim for constructive fraud brought against all four Defendants. To assert such a claim Plaintiff must "allege the facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones* 232 N.C. 547, 549 (1950). Thus, the existence of a fiduciary relationship is an essential element of a constructive fraud claim. *Brown v. Secor*, 2017 NCBC LEXIS 65, at **18 (N.C. Super Ct. 2017).

45. With respect to the claim against Mindpath, a North Carolina limited liability company does not owe fiduciary duties to its members. Consequently, Plaintiff cannot assert a claim for constructive fraud against Mindpath. *Merrell v. Smith*, 2020 NCBC LEXIS 150, at **22–25 (N.C. Super. Ct. Dec. 22, 2020) (holding that an LLC does not owe a fiduciary duty to its members and dismissing plaintiffs' claims against the LLC for breach of fiduciary duty and constructive fraud). As for MISO, there is no relationship between Plaintiff and that entity that would give rise

to a fiduciary duty. The result is that the constructive fraud claim alleged against the entity Defendants fails.

46. With respect to the claim against the individual Defendants, Plaintiff alleges that Stanley, as president of Mindpath, and Yvonne, as a member of Mindpath and an owner of MISO, were in positions "of trust and confidence with respect to other members of Mindpath, including Dr. Hartsell." (Am. Comp. ¶¶ 69–70). As stated above, however, the facts alleged do not support the existence of either a *de jure* or a *de facto* fiduciary relationship between Plaintiff and the individual Defendants. Without a fiduciary relationship, there is no claim for constructive fraud. *See e.g., DS&T II, Inc. v. D&E Tax & Accounting, Inc.*, 2021 NCBC LEXIS 87, at \*\*18 (N.C. Super. Ct. Oct. 4, 2021) ("A claim for constructive fraud requires the presence of a confidential or fiduciary relationship between the parties."). Accordingly, Count Five fails with respect to the individual Defendants.[6]

## V. CONCLUSION

47. For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, and Plaintiff's Fourth, Fifth and Sixth Claims for relief are **DISMISSED** with prejudice.

---

[6] Defendants also contend that Counts Four and Five fail because the claims ae derivative and Plaintiff has failed to satisfy the requirements for written demand on the LLC. *See Al-Hassan v. Salloum*, 2020 NCBC LEXIS 22, at \*5 (N.C. Super. Ct. 2020). Because the Court concludes that no fiduciary duty exists on the facts as alleged, the Court need not address the merits of this contention.

This the 2nd day of November, 2022.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases