Deleuran v. Thompson, 2025 NCBC 48.

STATE OF NORTH CAROLINA

WAKE COUNTY

PATRICIA DELEURAN,

        Plaintiff,

v.

FRANCES ANNE THOMPSON,

        Defendant,

v.

LIVING WELL BEHAVIORAL
HEALTH, INC.

        Nominal
        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV003828-910

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

1. **THIS MATTER** is before the Court upon Defendant Frances Anne Thompson's Motion to Dismiss (the "Motion"), filed pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)") on 4 April 2025 in the above-captioned case.[1]

2. Having considered the Motion, the parties' briefs in support of and in opposition to the Motion, the Verified Complaint[2] ("Complaint"), the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** the Motion.

*Eldreth Law Firm, PLLC, by Matthew D. Huffman, for Plaintiff Patricia Deleuran.*

---

[1] (Def.'s Mot. Dismiss, ECF No. 9.)

[2] (Verified Compl. [hereinafter, "Compl."], ECF No. 2.)

*Adams, Howell, Sizemore & Adams, P.A., by Jeremy Jackson and Ryan J. Adams, for Defendant Frances Thompson.*

Brown, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact when ruling on motions to dismiss under Rules 12(b)(1) or 12(b)(6). Rather, the Court recites only those facts that are relevant and necessary to the Court's determination of the Motion. *See, e.g., Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 53, at *6 (N.C. Super. Ct. Aug. 15, 2019); *Concrete Serv. Corp. v. Invs. Grp., Inc.*, 79 N.C. App. 678, 681 (1986). The following background assumes that the allegations of the Complaint are true. *See, e.g., White v. White*, 296 N.C. 661, 667 (1979) (requiring the trial court to treat a complaint's allegations as true under Rule 12(b)(6)); *Munger v. State*, 202 N.C. App. 404, 410 (2010) ("However, if the trial court confines its evaluation [of a party's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)] to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff.").

4. Plaintiff Patricia DeLeuran ("Ms. DeLeuran" or "Plaintiff") and Defendant Frances Anne Thompson ("Ms. Thompson" or "Defendant") are the sole and equal owners of Living Well Behavioral Health, Inc. ("Living Well").[3] Living Well is a mental health provider incorporated in North Carolina and headquartered in Wake

---

[3] (Compl. ¶¶ 3, 10.)

County.[4]  The default provisions of Chapter 55 of the North Carolina General Statutes, the North Carolina Business Corporation Act, govern the company as no bylaws have been adopted.[5]

5.    This case concerns a dispute over the operation of, and distribution of funds from, Living Well.  Ms. DeLeuran alleges that since 2019 Ms. Thompson made a number of unapproved distributions to herself from company funds.[6]  Specifically, Ms. DeLeuran alleges upon information and belief that Ms. Thompson:

a. "distributed property belonging to [Living Well] to herself in . . . amounts believed to exceed $100,000";[7]

b. "directed at least one employee [to] at least one location of Living Well to accept cash payments belonging to Living Well, which [Ms.] Thompson has converted to her own use";[8]

c. "accepted cash payments that belong to Living Well, which [she] converted to her own use";[9] and

d. "converted over Two Hundred Thousand Dollars ($200,000.00) in cash payments belong[ing] to Living Well to her own use[.]"[10]

---

[4] (Compl. ¶ 3.)

[5] (Compl. ¶ 13.)

[6] (Compl. ¶ 19.)

[7] (Compl. ¶ 19.)

[8] (Compl. ¶ 20.)

[9] (Compl. ¶ 21.)

[10] (Compl. ¶ 22.)

6. Additionally, Ms. DeLeuran alleges that Ms. Thompson:

   a. removed her from bank and vendor accounts belonging to Living Well, removed her access to company software and company payroll services, and "[o]therwise limited or prohibited [her] from accessing records and systems belonging [to Living Well]";[11]

   b. "removed all the funds [from] the operating account belonging to [Living Well] and placed them in another account at a different bank, to which Ms. DeLeuran has no access";[12]

   c. "filed tax returns for Living Well that did not reflect the unbalanced distribution of profit, thus subjecting Ms. DeLeuran to tax liability [for] at least part of the distribution from Living Well that was received by Defendant Thompson";[13]

   d. "took control of the payroll for two employees and stopped payroll payments and insurance coverage to them without terminating their employment";[14] and

   e. "changed the locks of at least one of the office buildings where [Living Well] operates and has not provided keys to Ms. DeLeuran[.]"[15]

---

[11] (Compl. ¶ 24.)

[12] (Compl. ¶ 26.)

[13] (Compl. ¶ 28.)

[14] (Compl. ¶ 33.)

[15] (Compl. ¶ 35.)

7.    Ms. DeLeuran further alleges that she "made written demand to Defendant Thompson directly and to Defendant Thompson through her attorneys to provide access to bank records belong[ing] to [Living Well], provide access to financial records belong[ing] to [Living Well], provide access to bank accounts and vendor accounts belonging to [Living Well], and otherwise restore Ms. DeLeuran's access to the [business.]"[16] Ms. Thompson, through her counsel, allegedly failed to cooperate with the written demand and provide Ms. DeLeuran access to Living Well's records and accounts.[17]

8.    On 30 January 2025, Ms. DeLeuran filed the Complaint, asserting claims against Ms. Thompson for breach of the North Carolina Business Corporation Act, breach of fiduciary duty, conversion, fraud, constructive fraud, piercing the corporate veil, and punitive damages.[18] Ms. DeLeuran alleges that she is bringing this suit derivatively on behalf of Living Well, stating "[t]his action is a derivative action pursuant to N.C. Gen. Stat. § 55-7-40 and Chapter 55, *et seq.* whereby Ms. DeLeuran is bringing action in the right of Living Well against Defendant Thompson for damage Defendant Thompson has caused to Living Well."[19] This case was designated as a

---

[16] (Compl. ¶ 32.)

[17] (Compl. ¶ 32.)

[18] (Compl.)

[19] (Compl. ¶ 4.)

mandatory complex business case on 4 March 2025 and assigned to the undersigned.[20]

9. Ms. DeLeuran filed the Motion on 4 April 2025, and, after full briefing, the Court held a hearing on the Motion on 28 July 2025, at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

10. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction[,]" *In re Z.G.J.*, 378 N.C. 500, 504 (2021) (citation omitted), and "must be addressed, and found to exist, before the merits of the case are judicially resolved." *In re T.B.*, 200 N.C. App. 739, 742 (2009) (cleaned up). "[S]tanding arguments can be presented under both Rule 12(b)(1) and Rule 12(b)(6)[.]" *Finley v. Brown*, 2017 NCBC LEXIS 79, at *8 (N.C. Super. Ct. Sept. 1, 2017) (quoting *Sykes v. Health Network Sols., Inc.*, 2013 NCBC LEXIS 52, at *8 (N.C. Super. Ct. Dec. 5, 2013)).

11. "Rule 12(b)(1) requires the dismissal of any action 'based upon a trial court's lack of jurisdiction over the subject matter of the claim.'" *Watson v. Joyner-Watson*, 263 N.C. App. 393, 394 (2018) (quoting N.C. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Harper v. City of Asheville*, 160 N.C. App. 209, 217 (2003). In ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court "may consider matters outside the

---

[20] (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

pleadings" in determining whether subject matter jurisdiction exists, *Harris v. Matthews*, 361 N.C. 265, 271 (2007), and must "view the allegations [of the complaint] as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644 (2008).

12. In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider the pleading and "any exhibits attached to the [pleading,]" *Krawiec v. Manly*, 370 N.C. 602, 606 (2018), to determine "whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Pro. Window Cleaning, Inc.*, 120 N.C. App. 154, 158 (1995). Additionally, a court may "properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

13. Under Rule 12(b)(6), "the trial court is to construe the pleading liberally and in the light most favorable to the plaintiff, taking as true and admitted all well-pleaded factual allegations contained within the [pleading]." *Donovan v. Fiumara*, 114 N.C. App. 524, 526 (1994) (cleaned up); *see also Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (under Rule 12(b)(6), the allegations of the complaint should be viewed as "true and in the light most favorable to the non-moving party") (cleaned up). The claim is not to be dismissed unless it appears *beyond doubt* that the non-moving party could prove *no* set of facts in support of his claim which would entitle him to relief. *U.S. Bank Nat'l Ass'n v. Pinkney*, 369 N.C. 723, 726 (2017)

(emphasis added). The Supreme Court of North Carolina has determined that "dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

## III.

## ANALYSIS

14. Defendant moves the Court to dismiss all of Plaintiff's claims pursuant to Rules 12(b)(1) and/or 12(b)(6) "to the extent any of the claims alleged in the complaint are derivative."[21] Defendant additionally moves the Court under Rules 12(b)(1) and/or 12(b)(6) to dismiss all of Plaintiff's claims because she cannot "proceed with her claims individually."[22]

***Plaintiff's claims must be dismissed to the extent any of the claims alleged are derivative as Plaintiff does not allege a written demand has been made upon Living Well as required by N.C.G.S. § 55-7-42.***

15. Section 55-7-42 of the North Carolina Business Corporation Act (the "Act") states that:

> No shareholder may commence a derivative proceeding until:
>
>> (1) A *written demand* has been made *upon the corporation* to take suitable action; and

---

[21] (Def.'s Br. Supp. Mot. Dismiss [hereinafter, "Def.'s Br. Supp."] 7, ECF No. 10.)

[22] (Def.'s Br. Supp. 7.)

(2) 90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period." N.C.G.S. § 55-7-42 (emphasis added).

This statutory demand requirement allows the corporation, as the real party in interest in derivative proceedings, "a chance to investigate the claim and, if it chooses, to vindicate its own rights before freeing its members to seek relief on its behalf." *JT Russell & Sons, Inc. v. Russell*, 2024 NCBC LEXIS 37, at *5–6 (N.C. Super. Ct. Feb. 28, 2024) (quoting *Al-Hassan v. Salloum*, 2020 NCBC LEXIS 22, at *5 (N.C. Super. Ct. Feb. 20, 2022) (discussing analogous demand requirement for derivative actions on behalf of LLCs)). Compliance is "necessary to confer standing on shareholders in a derivative action." *JT Russell & Sons, Inc.*, 2024 NCBC LEXIS 37, at *6 (quoting *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 203 (2015)). Thus, failure to make a proper pre-suit demand deprives the plaintiff of standing and the trial court of jurisdiction. *JT Russell & Sons, Inc.*, 2024 NCBC LEXIS 37, at *6 (citing *Town of Midland v. Harrell*, 385 N.C. 365, 371 (2023) ("If a plaintiff does not have standing to assert a claim for relief, the trial court lacks subject matter jurisdiction over the claim.")).

16. Furthermore, our courts have held with crystal clarity that a list of claims, without more, is not a proper demand. *JT Russell & Sons, Inc.*, 2024 NCBC LEXIS 37, at *6. N.C.G.S. § 55-7-42 contemplates "a demand upon the company to take appropriate and tangible action," not a mere "list of legal claims for relief to be asserted by the [shareholder] in a forthcoming lawsuit." *Cumberland Cnty. Hosp.*

*Sys. v. Woodcock*, 2023 NCBC LEXIS 43, at *18 (N.C. Super. Ct. Mar. 21, 2023) (discussing analogous LLC statute); *see also Bourgeois v. LaPelusa*, 2022 NCBC LEXIS 111, at *28 (N.C. Super. Ct. Sept. 23, 2022) ("Despite listing these grievances, nowhere does the letter specify what action Bourgeois is seeking."); *Miller v. Burlington Chem. Co.*, 2017 NCBC LEXIS 6, at *30 (N.C. Super. Ct. Jan. 27, 2017) ("Such complaints and allegations of injury, however, are not demands to take suitable action."); *Garlock v. Hilliard*, 2000 NCBC LEXIS 6, at *10 (N.C. Super. Ct. Aug. 22, 2000) ("That letter made no specific demand and did not request that the Board of Directors take any action or bring any lawsuit.").

17.    Defendant seeks dismissal of Plaintiff's claims, asserting "Plaintiff's Complaint admits in Paragraph 32 that no derivative demand had been made."[23] Furthermore, Defendant contends, even if the substance of the written demand made to Defendant was proper, "it would not constitute a derivative demand because it was made to Defendant individually and not Living Well."[24]    Plaintiff contends in response that Plaintiff's derivative claims are properly pled as "[t]he Complaint

---

[23] (Def.'s Br. Supp. 6.)  In paragraph 32 of the Complaint, Plaintiff alleges "[i]f Ms. DeLeuran were to make a demand in writing to the Estate or the heirs and waited ninety days to see if she complied prior to commencing a civil action, Defendant Thompson would only continue her pattern of conversion, fraud, and other illegal action."  (Compl. ¶ 32.)

[24] (Def.'s Br. Supp. 7.)  The Complaint also alleges Plaintiff "made written demand to Defendant Thompson *directly* and to Defendant Thompson *through her attorneys* to provide access to bank records belong[ing] to the Corporation, provide access to financial records belong[ing] to the Corporation, provide access to bank accounts and vendor accounts belonging to the Corporation, and otherwise restore Ms. DeLeuran's access to the Corporation such that she may enjoy equal control in the operation and decision making of the Corporation but Defendant Thompson, *through counsel*, has refused."  (Compl. ¶ 32 (emphasis added).)

alleges that the Defendant['s] misconduct caused harm to the corporation, and the Plaintiff, as a shareholder, seeks to enforce the corporation's rights."[25] Additionally, Plaintiff states, "the Plaintiff made a demand on the Defendant *as a corporation owner* that irreparable harm to the corporation would result from waiting 90 days through a demand letter."[26] In the alternative, Plaintiff contends that the Court should excuse the derivative demand as futile because "Plaintiff also recognized that the Defendant had already seized control of the business and gave no notice that she would yield control back to the Plaintiff."[27]

18. As a preliminary matter, the North Carolina Legislature eliminated the futility exception to the demand requirement in 1995. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 410–11 (2000) ("We hold, therefore, that the enactment of N.C. Gen. Stat. § 55-7-42 effected a repeal of the futility exception[.]"); *see also* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.03[2] (7th ed. 2016) ("The Act now requires a prior demand on a North Carolina corporation to be made in all cases, without any exception[.] This no-exception rule is a distinct change from prior law in North Carolina and the continuing law in many other jurisdictions, under which the courts have held that a demand on the director may be excused if it would be futile." (footnotes omitted)).

---

[25] (Pl.'s Br. Resp. Def.'s Mot. Dismiss [hereinafter, "Pl.'s Resp."] 6, ECF No. 15.)

[26] (Pl.'s Resp. 6 (emphasis added).)

[27] (Pl.'s Resp. 6.)

Because the futility exception to the demand requirement no longer exists in North Carolina, the Court will not address this aspect of Plaintiff's argument.

19. Defendant is correct that, even when viewing Plaintiff's allegations as true and construing them in the light most favorable to Plaintiff, Plaintiff's "written demand" would not constitute a legally sufficient derivative demand. N.C.G.S. § 55-7-42 clearly states the demand must be made "upon the corporation." Here, Plaintiff alleges she "made written demand to *Defendant Thompson directly* and to *Defendant Thompson through her attorneys*[.]"[28] Making a written demand to Ms. Thompson, rather than "upon the corporation," is legally insufficient.[29]

20. At the hearing on the Motion, Plaintiff attempted to salvage her derivative claims by contending that Ms. Thompson is currently listed as Living Well's registered agent. However, as Defendant noted at the hearing, Ms. Thompson was only listed as Living Well's registered agent as of the Annual Report filed with the North Carolina Secretary of State on 21 July 2025 – after this litigation had commenced. Ms. DeLeuran was listed as Living Well's registered agent at the time

---

[28] (Compl. ¶ 32 (emphasis added).)

[29] In addition, at the hearing on the Motion the parties stated the purported "written demand" made to Ms. Thompson was included as part of an email regarding settlement negotiations subject to N.C. R. Evid. 408. The parties chose not to file or otherwise provide a copy of this email to the Court, and the Court concludes that, based upon counsel's representations at the hearing, such an email would not constitute the clear written demand envisioned by N.C.G.S. § 55-7-42.

the Complaint was filed and at the time the purported written demand was allegedly made.[30]

21. The Court concludes that Ms. DeLeuran has not satisfied N.C.G.S. § 55-7-42 and lacks standing to pursue a derivative action on Living Well's behalf. For this reason, the Court **DISMISSES** Plaintiff's derivative claims without prejudice for lack of subject matter jurisdiction.

***Plaintiff similarly cannot proceed with the majority of her claims individually as she does not allege the existence of a special duty or that she suffered a personal injury, separate and distinct from those allegedly suffered by the corporation.***

22. Since Plaintiff cannot proceed with her claims derivatively, the question becomes whether she can proceed with her claims individually.

23. Generally, a shareholder of a corporation "cannot pursue individual causes of action for wrongs or injuries to the corporation." *Chisum v. MacDonald*, 2018 NCBC LEXIS 34, at *23 (N.C. Super. Ct. Apr. 18, 2018) (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658 (1997)). However, the North Carolina Supreme Court has recognized two exceptions to the general rule (1) where "the wrongdoer owed [the shareholder] a special duty[,]" or (2) where the shareholder suffered an injury "separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Barger*, 346 N.C. at 659.

---

[30] Annual Reports and Articles of Incorporation are "public record[s] available through the North Carolina Secretary of State" and are subject to "judicial notice." *Whalen v. Tuttle*, 2024 NCBC LEXIS 146, at *7 (N.C. Super. Ct. Nov. 19, 2024); *see also Truist Fin. Corp. v. Rocco*, 2024 NCBC LEXIS 62, at *31 n.75 (N.C. Super. Ct. Apr. 25, 2024) (citing N.C. R. Evid. 201).

24. Regarding the first exception, "[t]he existence of a special duty . . . would be established by facts showing that defendant[] owed a duty to plaintiff[] that was personal to plaintiff[] as [a] shareholder[] and was separate and distinct from the duty defendant[] owed the corporation." *Id.* A special duty has been found "when the wrongful actions of a party induced an individual to become a shareholder; when a party violated its fiduciary duty to the shareholder; when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation." *Id.* (citations omitted). "This list is illustrative; it is not an exclusive list of all factual situations in which a special duty may be found." *Id.*

25. Regarding the second exception, "[a]n injury is peculiar or personal to the shareholder if 'a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation.'" *Id.*

26. Here, Plaintiff contends that, although Plaintiff and Defendant are equal shareholders, a special duty, sufficient to meet the first *Barger* exception, was created by virtue of the imbalance between Plaintiff's and Defendant's access to and influence over Living Well.[31] However, North Carolina's courts have repeatedly refused to impose such a fiduciary duty in favor of a fifty-percent owner absent extraordinary or unique circumstances. *See, e.g., Copeland v. Winters*, 2019 NCBC LEXIS 20, at *8–9 (N.C. Super. Ct. Mar. 18, 2019) ("The North Carolina Court of Appeals . . . has consistently held that absent extraordinary unique circumstances . . . a fifty percent

---

[31] (Pl.'s Resp. 10.)

owner of a corporate entity does not owe fiduciary duties to the other fifty percent owner."); *Grasinger v. Perkins*, 2016 N.C. App. LEXIS 1040, at *8–9 (2016) ("However, plaintiffs cite no authority, and our research discloses none, that recognizes *Barger*'s special duty exception in situations involving *equal* shareholders where, as here, the aggrieved shareholders cannot demonstrate an injury separate and distinct from the corporation." (emphasis in original)); *Aubin v. Susi*, 149 N.C. App. 320, 326 (2002) (holding a fifty-percent shareholder of a closely held corporation "cannot maintain an action against defendants for her individual recovery absent a showing that she has sustained 'a loss peculiar to herself by reason of some special circumstances or special relationship' to defendants."); *Allen v. Ferrera*, 141 N.C. App. 284 (2000) (recognizing that a special duty may be owed to minority shareholders, but, as a fifty percent owner, the plaintiff was not a minority shareholder); *Outen v. Mical*, 118 N.C. App. 263, 266–67 (1995) (dismissing the argument that a fifty percent shareholder relationship created a special relationship sufficient to establish individual standing).

27.    As the Court noted in *Maurer*:

> [T]he cases affording an individual claim to the minority shareholder were based, at least in part, on the fact that the minority shareholder otherwise faces potentially insurmountable hurdles because of the procedural requirements for derivative actions which can be manipulated by a controlling majority. A fifty percent owner, with the ability to impose an impasse, is not in the same precarious position. An equal owner, unlike a minority owner, can automatically create a deadlock on any matter requiring a shareholder vote, and the existence of such a deadlock may afford greater access to judicial dissolution and a limit on the control of the other shareholder.

*Maurer v. Maurer*, 2013 NCBC LEXIS 41, at *11–12 (N.C. Super. Ct. Aug. 23, 2013).

Thus, based on a review of the Complaint, the relevant record before the Court, and

the parties' arguments at the hearing on the Motion, the Court finds the absence of "extraordinary unique circumstances" that would justify a departure from precedent. The Court therefore concludes that Ms. DeLeuran's allegations do not show a special duty that avoids the *Barger* rule which precludes individual claims.

28. To escape the *Barger* rule, Ms. DeLeuran must adequately allege an injury separate and distinct from the corporation. The Court will address each of Plaintiff's claims in turn to determine whether Ms. DeLeuran adequately alleges a "loss peculiar to [herself]." *Outen*, 118 N.C. App. at 266.

**Breach of the Business Corporation Act**

29. In her first cause of action, Ms. DeLeuran alleges generally that Ms. Thompson's conduct violated the Act.[32] Specifically, Ms. DeLeuran states that Ms. Thomspon failed to uphold her fiduciary duty to Living Well and failed to provide Ms. DeLeuran, an officer of Living Well, access to the company's books and records.[33] Due to Ms. Thompson's alleged breach of the Act, Ms. DeLeuran contends she "has been damage[d] in excess of $25,000.00 to be proven at trial" and is personally "at risk" because she "has been locked out of accounts and payroll for the company[.]"[34]

30. Plaintiff's Complaint, to the extent it alleges any specific injury or damage, generally alleges the types suffered by the corporation, not its individual owners. For instance, Ms. DeLeuran alleges that Ms. Thompson "has distributed property

---

[32] (Compl. ¶ 38.)

[33] (Compl. ¶ 38; Pl.'s Resp. 7–8.)

[34] (Compl. ¶ 40; Pl.'s Resp. 8.)

belonging to the Corporation to herself[,]"[35] "made wrongful distributions to herself[,]"[36] and put Living Well at risk of a lawsuit due to her failure to discharge her duties "honestly, conscientiously, fairly, and with undivided loyalty to the corporation."[37] These alleged injuries are ones suffered first and foremost by Living Well. However, Ms. DeLeuran additionally alleges that Ms. Thompson "limited or prohibited Ms. DeLeuran from accessing records and systems belonging [to Living Well]."[38] Pursuant to the Act, shareholders of a corporation have a statutory right to access and inspect books and records of the corporation. N.C.G.S. § 55-16-02. Ms. DeLeuran's allegations that Ms. Thompson limited or prohibited her from accessing Living Well's books, records, and systems adequately plead a special injury under *Barger* in relation to Plaintiff's first cause of action and support an individual claim against Ms. Thompson.

**Breach of Fiduciary Duty**

31. Ms. DeLeuran next alleges Ms. Thompson is liable for breach of fiduciary duty because she distributed property belonging to Living Well to herself, made wrongful distributions to herself, and "refused Ms. DeLeuran the ability to operate [Living Well]."[39] Ms. DeLeuran specifically alleges that Ms. Thompson breached her

---

[35] (Compl. ¶ 19.)

[36] (Compl. ¶ 27.)

[37] (Compl. ¶¶ 23, 34.)

[38] (Compl. ¶ 24.)

[39] (Compl. ¶¶ 41–46.)

fiduciary duties to Living Well, not Ms. DeLeuran.[40]  Furthermore, nowhere in the Complaint does Ms. DeLeuran allege that she suffered a separate and distinct injury from Living Well as a result of Ms. Thompson's breach of fiduciary duty. Consequently, the Court concludes that Ms. DeLeuran cannot bring her claim for breach of fiduciary duty individually.

## Conversion

32.    In her third cause of action, Ms. DeLeuran alleges that "Defendant Thompson converted the funds belonging to Living Well to her own use"[41] and that, as a result, Living Well suffered damages.[42]  There are no allegations in the Complaint that Defendant converted Plaintiff's property, rather than Living Well's property.  As Plaintiff fails to allege that she suffered an injury separate and distinct from that suffered by Living Well, this claim similarly cannot proceed on an individual basis.

## Fraud

33.    Ms. DeLeuran contends that Ms. Thompson is individually liable for fraud because Ms. Thompson "intentionally concealed from Ms. DeLeuran that she managed the financial records and accounting of Living Well inaccurately, unfairly, and in breach of her duties as a corporate officer of Living Well" and "intended for

---

[40] (Compl. ¶¶ 41–46.)

[41] (Compl. ¶ 49.)

[42] (Compl. ¶ 50.)

Ms. DeLeuran to rely on her concealments[.]"[43]  Furthermore, Ms. DeLeuran alleges

that she "reasonably relied on Defendant Thompson['s] concealments and

misrepresentations."[44]  Again, Ms. DeLeuran neither alleges or demonstrates how

she suffered an individual loss, separate and distinct from any damage suffered by

Living Well.  Thus, Ms. DeLeuran cannot proceed with her fraud claim on an

individual basis.

**Constructive Fraud**

34.  In her claim for constructive fraud, Ms. DeLeuran alleges Ms. Thompson

"used her position of trust to convert assets, make wrongful distributions of cash and

funds, and conceal financial records from Ms. DeLeuran to the detriment of Ms.

DeLeuran and to the benefit of herself."[45]  However, as Defendant contends, "it is

Living Well, not Plaintiff, that is harmed by Defendant's alleged conduct.  The

converted assets, improper distributions, and financial records all belong to Living

Well."[46]  Similarly, Ms. DeLeuran cannot proceed with a constructive fraud claim on

an individual basis.

**Piercing the Corporate Veil**

35.  A claim for piercing the corporate veil is allowed as an exception to the

general rule that "in the ordinary course of business, a corporation is treated as

---

[43] (Compl. ¶¶ 53–54.)

[44] (Compl. ¶ 55.)

[45] (Compl. ¶ 60.)

[46] (Def.'s Br. Supp. 13.)

distinct from its shareholders." *Green v. Freeman*, 367 N.C. 136, 144–45 (2013) (quoting *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 438 (2008)). "The doctrine allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation." *Freeman*, 367 N.C. at 145.

36. Here, Ms. DeLeuran asserts a cause of action for "Piercing the Corporate Veil against Defendant Thompson[,]" alleging "Defendant Thompson controlled Living Well to such an extent that Living Well had no separate mind, will or existence of its own[.]"[47]    However, as Defendant argues, "Defendant has been sued individually, and all the claims are against Defendant."[48]  Thus, there is no corporate veil to pierce and Ms. DeLeuran cannot proceed on this claim on either an individual or a derivative basis.

**Punitive Damages**

37. Ms. DeLeuran lastly brings a claim for punitive damages alleging that, due to Ms. Thompson's "willful and wanton" conduct, Ms. DeLeuran is "entitled to recover punitive damages."[49]  However, "[a] claim for punitive damages is not a stand-alone cause of action." *Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at *146 (N.C. Super. Ct. Dec. 31, 2019) ("North Carolina courts have repeatedly held that 'a claim for punitive damages is not a stand-alone claim.'" (quoting *Funderburk v.*

---

[47] (Compl. ¶¶ 62–66.)

[48] (Def.'s Br. Supp. 14.)

[49] (Compl. ¶¶ 67–69.)

*JPMorgan Chase Bank, N.A.*, 241 N.C. App. 415, 425 (2015)). Thus, the Court concludes that Defendant's Motion to dismiss Plaintiff's punitive damages claim should be granted.

38. In sum, except for the Breach of the Act claim, Plaintiff's Complaint fails to allege facts sufficient to establish either of the exceptions outlined in *Barger* and its progeny. The Court therefore concludes that, except for the Breach of the Act claim, Plaintiff cannot proceed with the claims alleged in her Complaint on an individual basis and that Plaintiff's individual claims against Ms. Thompson should be dismissed.

IV.

CONCLUSION

39. **WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as follows:

    a. Defendant's Motion is **GRANTED** to the extent any of the claims alleged in the Complaint are derivative for lack of subject matter jurisdiction and Plaintiff's derivative claims are hereby **DISMISSED without prejudice**.[50]

    b. Defendant's Motion is **GRANTED** to the extent the second, third, fourth, fifth, sixth, and seventh claims alleged in the Complaint are

---

[50] Notwithstanding the Court's conclusions that these claims should be dismissed, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013). The Court concludes, in the exercise of its discretion, that dismissal of Plaintiff's derivative claims should be without prejudice to Plaintiff's right to attempt to reassert such claims through proper factual allegations by way of a motion to amend.

brought as individual causes of action against Defendant and Plaintiff's individual claims are hereby **DISMISSED with prejudice**.

c. Defendant's Motion is **DENIED** to the extent Plaintiff's claim for Breach of the Act is brought as an individual cause of action against Defendant.

**SO ORDERED**, this the 22nd day of August, 2025.

/s/ A. Todd Brown
A. Todd Brown
Special Superior Court Judge
 for Complex Business Cases